[Civ. No. 2184.   Second Appellate District.—January 11, 1917.]

SUSANNA P. BRYANT et al., Petitioners, v. BOARD OF
    SUPERVISORS OF THE COUNTY OF ORANGE
    et al., Respondents.

STORM-WATER DISTRICT — ORGANIZATION UNDER ACT OF 1909 — ACTS OF
    SUPERVISORS—REVIEW ON CERTIORARI.—Under the act of the legis-
    lature, approved March 13, 1909 (Stats. 1909, p. 339), providing for
    the formation, organization, and government of storm-water districts
    for the purpose of protecting the land therein from damage from
    such waters and from the waters of innavigable streams, etc., a
    board of supervisors, in ascertaining the required facts and deter-
    mining that they exist, exercises judicial functions, and its action
    therein is subject to review on *certiorari.*

ID.—ORGANIZATION OF PUBLIC CORPORATION BY LOCAL BOARD — RELIEF
    AGAINST VOID PROCEEDINGS—CERTIORARI.—The proceeding by writ
    of review is, under appropriate circumstances, the correct means of
    relief against void proceedings for the organization of a corporation
    for public purposes, where the method of creation of such corpora-
    tion is prescribed by statute, and a local board is empowered to
    create the corporation upon certain conditions, and upon the ascer-
    tainment of certain facts, by such board, after a hearing held after
    notice to the parties interested.   In ascertaining the required facts
    and determining that they exist, the action of the board is of a
    judicial character, and it sufficiently comes within the purview of
    the writ if such proceedings are of a judicial nature and are exer-
    cised by a *quasi*-judicial body.

ID.—JURISDICTION TO ORGANIZE STORM-WATER DISTRICT—OWNERSHIP OF
    LAND BY PETITIONERS—PASSAGE OF RESOLUTION PRIOR TO PROOF OF
    OWNERSHIP.—In a proceeding on petition to a county board of
    supervisors for the formation of a storm-water district, the board
    is not without jurisdiction to organize the district because of the
    fact that, prior to the adoption of the resolution of intention to form

the district, no proof was made to the board that the signatures attached to the petition were the genuine signatures of the persons whose names were signed thereto, where the jurisdictional fact of ownership existed when the petition was filed, as the jurisdiction of the board to act in the first step of the proceedings depends upon the fact that the petitioners were owners of land in the proposed district, rather than upon the act of receiving *ex parte* testimony at a time when no hearing upon notice could occur as to such ownership.

ID.—INSUFFICIENT NOTICE TO PROPERTY OWNERS—LAST COMPLETED AS-
SESSMENT-ROLL — LACK- OF JURISDICTION.—Under section 2 of the Storm-water District Act, which requires the clerk of the board of supervisors to mail copies of the notice of intention to form the district to each owner of land in the proposed district whose name appears as such on the last completed assessment-roll, the mailing of such notices prior to the first Monday in July, 1916, to the persons whose names in fact thereafter appeared on the assessment-roll of 1916–17 (but omitting names of some persons whose names, as property owners within the proposed district, appeared upon the as-sessment-roll of the county for the year 1915–16), is not a sufficient notice to give the board jurisdiction to proceed further with the formation of the district, as under section 3672 of the Political Code there could not be a completed assessment-roll for such year 1916–17 until such first Monday in July.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Second Appellate District to annul proceedings forming a storm-water district.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher, Wm. J. O'Brien, and E. W. Freeman, for Petitioners.

L. A. West, District Attorney, A. E. Koepsel, and Walter Eden, Deputies District Attorney, and Homer G. Ames, for Respondents.

CONREY, P. J.—*Certiorari.*   On the seventh day of June, 1916, there was presented to the board of supervisors of Orange County a petition for the formation of a storm-water district under the provisions of an act entitled, "An act to provide for the formation, organization and government of storm-water districts, for the purpose of protecting the land therein from damage from storm-water and from the waters of any innavigable stream, watercourse, canyon or wash,

for the construction of the necessary works of protection by said district, and for the levying of taxes and assessments to pay for the cost of constructing, repairing and maintaining such improvements,'' approved March 13, 1909 (Stats. 1909, p. 339); such district to be known as and called ''United Storm-water District of Orange County.''   Such proceedings were had that thereafter, on the second day of August, 1916, the board of supervisors passed a resolution whereby it purported to form and create said storm-water district.   On the eighth day of September the petitioners herein filed their petition for a writ of review, and the writ was issued.   Return having been duly made by the respondents, who at the same time filed a demurrer to the petition, the matter has been argued and submitted at the same time upon the demurrer and the return.

Respondents claim that the proceedings sought to be reviewed cannot be examined into under a writ of review, because it is not made to appear that the board of supervisors has exceeded its jurisdiction in the exercise of a judicial function, and because the petitioners have a plain, speedy, and adequate remedy by the writ of *quo warranto*.   This contention cannot be sustained.   The proceeding by writ of review is, under appropriate circumstances, the correct means of relief against void proceedings for the organization of a corporation for public purposes, where the method of creation of such corporation is prescribed by statute, and a local board is empowered to create the corporation upon certain conditions and upon the ascertainment of certain facts by such board, after a hearing held after notice to the parties interested.   In ascertaining the required facts and determining that they exist, the action of the board is of a judicial character.   And it sufficiently comes within the purview of the writ if such proceedings are of a judicial nature and are exercised by a *quasi*-judicial body.   (*Imperial Water Co. No. 1* v. *Board of Supervisors of Imperial County,* 162 Cal. 14, [120 Pac. 780].)   The statute relating to the creation of storm-water districts is similar in character to the statute providing for the creation of irrigation districts, referred to in the case above cited.   The present proceeding in this court has been commenced promptly, in order to prevent at its inception the organization of the district.   The case is therefore different from those where *de facto* corporations are

transacting business as existing organizations, and where, on account of the situation thus existing, it has been held that *quo warranto* was the exclusive remedy. (*Jaques* v. *Board of Supervisors,* 24 Cal. App. 381, [141 Pac. 404]; *Keech* v. *Joplin,* 157 Cal. 1, at p. 14, [106 Pac. 222].)

The petition of June 7, 1916, was signed by thirty-one persons, of whom it was recited in the petition that they were "owners of land whose names appear as such upon the last assessment-roll of the county of Orange, state of California," within a district of land in Orange County described in the petition, and which those petitioners desired to have formed into a storm-water district. Attached to that petition was a certificate, dated June 7, 1916, signed by the assessor of Orange County, by his chief deputy, certifying "that more than ten of the foregoing names appear on the assessment-roll of said Orange county for the year 1915–16 as owners of property within the district above described." Immediately preceding the foregoing certificate was a separate certificate by the same officer that, "I hereby certify that ten or more of the above signers are taxpayers of Orange county." It is stipulated that no evidence was taken or received by the board of supervisors as to the genuineness of the signatures to any petition filed with it for the formation of said district prior to the adoption (on the seventh day of June, 1916) of the resolution of intention to form said district, nor was any evidence taken or received by said board, prior to the adoption of said resolution, that the persons whose names were subscribed to any petition were the owners of land within said proposed district, other than the above-mentioned certificates of the county assessor. It is further stipulated that on the twenty-fifth day of July, 1916, the board of supervisors received evidence showing the genuineness of said signatures, and that more than ten of said signers were owners of land in said district, as shown by the assessment-rolls of 1915–16, and thereafter appeared on the assessment-rolls of 1916–17; but that at the same time objection was made (though not by the petitioners herein) that said board had not at that time jurisdiction to organize said district, because of the fact that, prior to the adoption of the resolution of intention to form said district, no proof was made to it that the signatures attached to the petition were the genuine signatures of the persons whose names were signed to said petition.

Section 1 of the Storm-water District Act of 1909, as amended in 1913 (Stats. 1913, p. 504), reads as follows:

"Storm-water districts may be formed under the provisions of this act for the purpose of protecting the lands in such districts from damage from storm-water, and from the waters from any innavigable stream, watercourse, canyon, or wash (or such districts may be formed for the purpose of spreading, conserving, storing, retaining or causing to percolate into the soil within such district any or all such waters). When ten or more owners of land whose names appear as such upon the last assessment-roll, in any district of land which lies in one body and is liable to damage from storm-water or from the waters of any innavigable stream, canyon or wash (or when such owners desire to spread, conserve, store, retain, or cause to percolate into the soil within such district any or all of such waters), shall present a petition to the board of supervisors of the county in which said land lies, or if the same lies in more than one county, then to the board of supervisors of the county in which the greater area of such land lies, setting forth the exterior boundaries of said district and asking that the district so described be formed into a storm-water district under the provisions of this act, the said board of supervisors shall pass a resolution declaring their intention to form and organize said portion of said county or counties into a storm-water district for the purpose of protecting the lands therein from damage from storm-water, and from the waters of any innavigable stream, canyon or wash (or for the purpose of spreading, conserving, storing, retaining or causing to percolate into the soil within such district any or all of such waters), and describing the exterior boundaries of the district. Said resolution shall fix a time and place for the hearing of the matter, not less than thirty days after the passage thereof, and direct the clerk of said board to publish a notice of the intention of the board of supervisors to form such storm-water district, and of the time and place fixed for the hearing, and shall designate some newspaper of general circulation, published and circulated in said proposed storm-water district, or if there is no newspaper so published and circulated, then some newspaper of general circulation, published and circulated in each county in which any part of said proposed district is situated in which said notice is to be published." The foregoing quota-

tion does not differ from the same section as enacted in 1909, except that the words which we have placed in parentheses were added in the amendment of 1913.

Section 2 of the same act, as amended in 1913 (Stats. 1913, p. 505), reads as follows:

"Thereupon said clerk shall cause to be published in the newspaper or newspapers so designated, for a period of twenty days before the date fixed for the hearing, a notice, which shall be headed, 'Notice of intention of the board of supervisors to form a storm-water district.' Said notice shall set forth the fact of the passage of such resolution with the date thereof, the boundaries of the proposed district, and the time and place for the hearing, and shall state that it is proposed to assess all property embraced in said proposed storm-water district, for the purpose of paying the damages, costs and expenses of constructing and repairing such dikes, levees, ditches, canals (reservoirs, shafts), and other improvements as may be necessary to protect the land in said district from damage from storm-water and from waters of any innavigable stream, canyon or wash (or to spread, conserve, store, retain or cause to percolate into the soil within such district any or all of such waters), and the necessary expense of maintaining said district, and shall refer to the resolution for further particulars. Said clerk shall send a copy of said notice by registered mail, postage prepaid, to each owner of land in the proposed district whose name appears as such on the last assessment-roll of the county or counties in which said proposed district lies, addressed to such owner at his address given on such assessment-roll, or if no address is given, then at his last known address, or if it be not known then at the county seat of the county in which his land lies. Said clerk shall make and file in his office an affidavit of such mailing, showing the names and addresses of the persons to whom such notices were sent, which shall be *prima facie* evidence that such notices were mailed as herein required." The foregoing quotation is identical with the same section as enacted in 1909, except that the words which we have placed in parentheses were added in the amendment of 1913; and except that where the amended section uses the words "whose name appears as such on the last assessment-roll," the original section used the words "whose name appears as such on the last *completed* assessment-roll"; and except that in the last clause

of the section the word "such" has been substituted for the word "said" in the phrase "that such notices were mailed."

In making the stipulation to which we have referred, it was further agreed that "such parts of this stipulation as the court shall decide are competent shall be deemed and taken as the return of the respondents to said writ of review"; but it was likewise agreed that in making the stipulation the respondents did not admit that any of the facts thus admitted were material, competent, or relevant. The respondents now contend that the fact that the board did not receive any evidence prior to passing its resolution of June 7, 1916, should not be considered, because it is a fact outside the record, in this, that it is a fact which could not be set forth in the return, since the board had no record of that fact. In support of this proposition we are reminded that the law does not provide for taking down or preserving the evidence in a proceeding of this kind before the board of supervisors, nor for the settlement of a bill of exceptions; and we are referred to *Central Pac. R. R. Co.* v. *Board of Equalization of Placer Co.*, 34 Cal. 352, and *Johnston* v. *Board of Supervisors,* 104 Cal. 390, [37 Pac. 1046], as cases in point. In those cases, however, we observe that the only disputed question was as to the sufficiency of evidence produced before the board of supervisors to authorize it to determine and act in a specified manner; the record clearly showing that the board did have jurisdiction to hear and determine the matter concerning which it was acting. As to such cases it was held that in a *certiorari* proceeding the court would not receive other evidence than the usual record to show what the evidence was which had been received by the board. It was said in the first of those decisions that some convenient mode might have been adopted by the board for the preservation and authentication of the evidence, when it was desired to have the proceedings reviewed; the inference being that in that event the evidence thus shown and made part of the return might have been considered by the court. That being so, we think that the clerk of the board in making the return required of him (Code Civ. Proc., sec. 1070) may certify to the fact that no evidence was received, and that this fact may then be considered by the court. There is another and even more forcible reason why in a case like the present the board might be required to make as full a return as it is

possible for it to make of the facts shown in evidence before it, when we take into consideration the nature of the question presented; for here the question goes to the very fact of jurisdiction of the board to act at all upon the petition for the formation of the storm-water district. "An exception to the rule that the sufficiency of the evidence will not be reviewed is made when the question is whether jurisdictional facts were or were not proved. This exception arises out of the most important office and function of the writ—the keeping of inferior courts and tribunals within proper bounds. If the decision of the inferior tribunal as to the sufficiency of the evidence to establish jurisdictional facts were not reviewable, the writ of *certiorari* would be of no avail as a remedy against an assumption of jurisdiction. And for the purpose of enabling the reviewing court to determine whether jurisdictional facts were established, it will require a return to be made of the evidence upon which such facts are based." (*Stumpf* v. *Board of Supervisors,* 131 Cal. 364, 367, [82 Am. St. Rep. 350, 63 Pac. 663].) Upon *certiorari,* though the inferior tribunal is required to certify only matters of record, yet if the jurisdictional facts do not appear of record it must certify "not only what is technically denominated the record, but such facts, or the evidence of them, as may be necessary to determine whatever questions as to jurisdiction of the inferior tribunal may be involved." (*Blair* v. *Hamilton,* 32 Cal. 49; *Golden Gate Tile Co.* v. *Superior Court,* 159 Cal. 474, 481, [114 Pac. 978].) In view of the law as thus established, we shall, in determining this case, give credit to the fact stipulated, and overrule the objection.

While admitting that in fact more than ten of the signers of the petition of June 7, 1916, were owners of land in the proposed storm-water district, whose names appeared as such on the assessment-roll of 1915–16 (and thereafter likewise appeared on the assessment-roll of 1916–17), the petitioners herein contend that since the board of supervisors passed its resolution of intention of June 7th without first receiving evidence to prove these facts, therefore the board was without jurisdiction to pass that resolution. This contention involves the proposition that the board's jurisdiction depended not merely upon the actual existence of certain jurisdictional facts, but also upon the production to the board of some formal evidence of those facts. And it involves the further

proposition that the alleged defect of jurisdiction (or of evidence of jurisdictional facts), thus caused, could not be remedied by evidence which the board received at the time of hearing of the application after notice published, at which time it was proved that the necessary number of signers of the petition were land owners as required by the statute.

We are of opinion that the jurisdiction of the board to act, in the first step of its proceedings, upon the petition of those who represented themselves to be land owners of land within the proposed district, depended upon the fact that they were such land owners, rather than upon the act of receiving *ex parte* testimony at a time when no hearing upon notice could occur. The case differs from that of *People* v. *Town of Linden*, 107 Cal. 94, [40 Pac. 115]. In that case the statute defining the proceedings for organization of the proposed corporation provided that the petition should be accompanied by affidavits which would be *prima facie* evidence of the requisite number of signers; and it is stated in the decision not only that the affidavit failed to state the necessary facts, but also that there never was any evidence of the genuineness of the signatures offered before the board of supervisors, and that the board never found or declared that such petition had been in fact signed by the necessary number of qualified petitioners. But in this case, it appears that after the notice required by section 1 of the statute had been given, and when the time of hearing thereby provided had arrived, the same questions of fact as to ownership of land by the petitioners, which necessarily came before the board as matters essential to the right of the board to "declare such storm-water district formed" (sec. 4 of Storm-water District Act of 1909), were heard and determined. The return herein shows that at that time, July 25, 1916, evidence was received and the fact of such ownership of land by the petitioners of June 7th was duly established. It therefore duly appears by the record before us, that this jurisdictional fact did exist when the petition of June 7th was filed. This being so, we think that the omission of the board to receive testimony prior to passing its resolution of intention of June 7th, does not establish a sufficient reason for holding that the board's proceedings were void. In arriving at this conclusion we are not attaching any importance whatever to the certificates of the county assessor which were attached to the land owners' petition.

Neither do we deny that it would be better practice for a board of supervisors to require sworn evidence of some kind, of such facts, before passing its resolution of intention in proceedings of that kind.

As we have shown, section 2 of the Storm-water District Act, as adopted in 1909, requires the clerk of the board of supervisors to mail copies of the specified notice to each owner of land in the proposed district "whose name appears as such on the last completed assessment-roll," etc.; whereas the same section as amended in 1913 omits the word "completed" from the clause just now quoted. This verbal change made no difference in the meaning of the clause. An uncompleted assessment-roll is not an assessment-roll at all. In the proceedings here under review, as the return herein shows, copies of the notice of intention to form the United Storm-water District of Orange County under the resolution of intention passed June 7, 1916, were mailed to sundry persons by the clerk of the board on the twenty-seventh day of June, 1916. On that day the clerk duly made his affidavit of mailing such notices, and therein stated that he had sent them by registered mail, postage prepaid, to each owner of land in the proposed storm-water district "whose name appears as such on the last completed assessment-roll of said county of Orange." The time of the hearing before the board as provided in the notice was the nineteenth day of July, 1916. The hearing at that time was duly adjourned to the twenty-fifth day of July. On that date sundry objections, which had been filed, were presented. One of the objections urged at that time, and also now insisted upon, was that copies of the notice had been sent to only a portion of and not to each owner of land in the proposed district whose name appeared as such on the last assessment-roll of the county. The objections were heard and considered by the board, which thereafter overruled the objections by resolution, wherein it was recited that the clerk did send a copy of said notice by registered mail, etc., "to each owner of land in the proposed district whose name appears as such on the last assessment-roll of said county of Orange, . . . as will more fully appear by the affidavit of J. M. Backs on file in the office of the county clerk of the county of Orange." A list of the persons to whom notices were sent is attached to the affidavit of J. M. Backs, the clerk of the board. The assessment-roll of the county for

the year 1916–17 could not legally have been completed so as to become an assessment-roll, under the provision of the Political Code, as early as the twenty-seventh day of June. The board of supervisors cannot hold its meeting to examine the assessment-book and equalize the assessment of property until the first Monday in July (Pol. Code, sec. 3672) ; and in contemplation of law there cannot be a complete assessment-roll until the business of equalization is completed. The board may order the addition of new items to the assessment-book. (Pol. Code, sec. 3681.) The affidavit of Mr. Backs, therefore, apparently referred to the "assessment-roll" of 1915–16.

But by the stipulation to which we have referred it is admitted (subject to respondents' objection that the facts are neither material, competent, nor relevant, and shall not be considered unless this court shall hold that they are admissible) that it appeared from the evidence taken before the board of supervisors at the hearing before it that the clerk had mailed the notice only to persons whose names appeared as owners of land upon a partially completed assessment-roll of 1916–17, and the residue from that portion of the statements of taxpayers, made and filed with the county assessor of said county between the sixth day of March, 1916, and the twenty-seventh day of June, 1916, which had not at that time been entered upon said roll, or upon the reports of the field deputies of said county assessor made and filed with said county assessor between said dates; that said assessment-roll had at that time been mostly completed, and there were but a few of said reports of field deputies which had not been entered on the book; that on the twenty-seventh day of June, 1916, no assessment-roll for the fiscal year of 1916–17 had been certified by the county assessor of said county, or delivered by said county assessor to the board of equalization of said county. But that said reports of field deputies of the assessor were, on the twenty-seventh day of June, 1916, all in the assessor's office, and no change was afterward made in said reports, and the data shown by said reports were afterward put on the assessor's books of 1916–17; so that the names of land owners, appearing on the assessment-roll of 1916–17, as the same was certified and filed with the board of equalization on July 3, 1916, were the same as appeared by said reports of said field deputies from which said mailing list was prepared. That

said clerk in mailing the said notices did not refer to or use the assessment-roll of 1915–16; that the names and addresses shown by the said affidavit of the clerk are the names and addresses as they now (date of stipulation being September 26, 1916) appear upon said assessment-roll of 1916–17; *but it does not contain the names of all owners of land within said proposed district whose names appear as such upon the assessment-roll of 1915–16.* Further facts are stipulated showing that the assessment was delivered to the board of equalization on July 3d as required by law, and that the equalization proceeded to completion in due form.

For the same reasons, and upon the same authorities which have led us to accept for use herein the stipulated fact that no evidence was received by the board prior to the passing of its resolution of intention, we also accept, as part of the return, the foregoing agreed facts, whereby it appears that the clerk did not mail copies of the notice of the subsequent hearing to all owners of land within the proposed district whose names appeared as such upon the last assessment-roll, and to whom the statute required that such notices should be sent. That the board of supervisors was without power to proceed further in the formation of the proposed district until notice had been given to all persons whom the law has pointed out as interested parties entitled to such notice is, of course, to be assumed without argument.

The petitioners herein further contend that the notice as published and mailed by the clerk is not in the form and does not contain the matters required by the statute; also, that the petition, notice, and resolution of intention were all fatally defective in that the attempted description of the exterior boundaries of the proposed district is so ambiguous on its face that it is impossible to trace the proposed boundaries or identify the land to be included in the district. It appears from the record that the notice as given followed the form prescribed in section 2 of the Storm-water District Act as enacted in 1909, and omits all of the additional matters required in such notice under said section 2 as amended in 1913. It is not necessary for us at this time to enter into a discussion of the effect of these omissions upon the question of sufficiency of the notice. Neither is it necessary to examine into the alleged defects in description of the boundaries of the proposed district. Since the judgment herein must go

in favor of the petitioners by reason of the failure of the clerk of the board of supervisors to give notice to some of the persons entitled thereto, it is fair to assume that if the attempt to form the storm-water district shall be prosecuted any further, care will be taken to frame the petition and the notice in the required statutory form and to avoid the alleged defects in description of boundaries.

For the reasons herein stated the demurrer is overruled, and it is ordered that the resolution of the board of supervisors of Orange County declaring the formation of the United Storm-water District of Orange County be and the same hereby is annulled and set aside.

James, J., and Shaw, J., concurred.