[L. A. No. 5483. In Bank.—July 31, 1918.]

MATT A. WOLFSKILL, Appellant, v. CITY COUNCIL OF THE CITY OF LOS ANGELES et al., Respondents.

MUNICIPAL CORPORATIONS — ANNEXATION OF TERRITORY — ANNEXATION ACT OF 1913—ASCERTAINING SUFFICIENCY OF PETITION—MINISTERIAL ACT.—Under the Municipal Corporations Annexation Act of 1913 (Stats. 1913, p. 587), as amended in 1915 (Stats. 1915, p. 305), in a proceeding to annex territory to a city, a city council is not limited as to the method to be pursued in informing its members with respect to the question whether a sufficient number of electors in the territory to be annexed had petitioned for the annexation, and, in determining that question, the city council acts in a ministerial capacity.

ID.—REPORT OF CITY CLERK.—All that the city council is required to do under the statute in such case is to compare the petition with the last registration of voters of the county in which the designated territory is situated, and when the city council instructs its clerk to perform that ministerial duty and report the result to it, and the city clerk performs that duty, the city council is sufficiently advised to make its finding.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge.

The facts are stated in the opinion of the court.

Hartley Shaw, for Appellant.

Albert Lee Stephens, Charles S. Burnell, and C. B. Penn, for Respondents.

RICHARDS, J., *pro tem.*—This is an appeal from a judgment in defendants' favor in a proceeding wherein the plaintiff seeks to review a certain determination of the city council of the city of Los Angeles taken in the course of proceedings for the annexation of certain territory to said city. The proceedings for annexation were instituted under the provisions of the Statute of 1913 as amended in 1915, [Stats. 1915, p. 305], relating to the annexation of inhabited outside territory to an incorporated city. The act contemplates the following steps in the course of such proceedings: Five electors of the territory to be annexed may file with the city council a notice of their intention to petition for annexation, upon receipt of which the city council may pass a resolution approving the same, and for thirty days thereafter no proceedings shall be taken for annexing the same territory to any other city. Upon receiving such petition, signed by not less than one-fourth in number of the qualified electors residing within said territory, asking for the annexation thereof to the city, the city council must call an election and submit to the electors residing in such territory the question of annexation. If the vote in this territory is favorable, the city council must then call an election and submit the proposition to the electors of the city, and if they also vote in favor of the annexation, the result must be certified to the Secretary of State and the annexation is then complete.

The proceedings in this matter were properly instituted on March 11, 1916, by the filing of the above notice of intention and by its approval by the city council through the passage of the appropriate resolution on March 14, 1916. On March 23, 1916, a petition for annexation, admittedly in proper form and signed by 120 persons, who described themselves therein as being qualified electors of the territory to be annexed and stating their respective places of residence therein, was duly filed with the clerk of the city council, and on March 24, 1916, said petition was presented by said clerk to the council in session. Whereupon, on motion of one of its members, duly seconded, a motion was passed instructing the city clerk, who was also the clerk of that body, "to examine said petition and ascertain whether said petition is signed by one-fourth in number of the qualified electors residing within the territory described in said petition as shown by the registration of voters of Los Angeles County." The clerk made such ex-

amination and rendered his report in writing to the city council in the following words:

"I beg to report as follows: In accordance with your instructions, I have carefully examined Petition No. 973 signed by G. A. Baber and others, filed in my office and presented to the council on March 24th, 1916, asking for the annexation to the city of Los Angeles of certain outside territory contiguous to the city on its western boundary, and comprising Westgate and other precincts in Los Angeles county.

"I find and report that said petition is signed by 94 qualified electors residing in the territory described in said petition, and thereby asked to be annexed to the city of Los Angeles, and that said petition is signed by one-fourth ($\frac{1}{4}$) and more of the qualified electors residing in said territory."

Thereupon the city council adopted a resolution as follows:

"That the council of the city of Los Angeles hereby finds and determines that that certain petition asking for annexation of the territory therein and hereinafter described, to the city of Los Angeles, is signed by 94 qualified electors residing in the territory described in said petition, and that said petition is signed by one-fourth ($\frac{1}{4}$) and more in number of the qualified electors residing within the territory described in said petition as shown by the registration of voters of Los Angeles county, within which county said territory is situated, and said petition is sufficient.

"Said territory is described as follows . . . "

Here followed the description of the territory sought to be annexed, whereupon the proper ordinance calling a special election and fixing the date thereof was adopted; and the election in accordance therewith was later held and resulted in a vote favoring the annexation of the proposed territory. The petitioner herein directs his attack upon these proceedings at that portion thereof wherein the city council undertook to determine that a petition signed by the requisite number of the qualified electors of the territory seeking annexation which the statute requires had been duly presented.

It is in the first place contended by the petitioner herein that in the determination of that question the city council acted judicially, and hence that their action thereon is the proper subject of review in this proceeding upon the authority of *Imperial Water Co.* v. *Board of Supervisors,* 162 Cal. 14, [120 Pac. 394], *Stumpf* v. *Board of Supervisors,* 131 Cal.

364, [82 Am. St. Rep. 350, 63 Pac. 663] , *Smith* v. *Strother,* 68 Cal. 194, [8 Pac. 852] , *Bryant* v. *Board of Supervisors,* 32 Cal. App. 495, [163 Pac. 341], and *Capuchino Ld. Co.* v. *San Bruno,* 34 Cal. App. 239, [167 Pac. 178].

The appellant's next contention is that the city council had no sufficient evidence before them upon which to base a finding that a sufficient petition for the calling of an election had been presented, and hence its action in making such finding and ordering the election based thereon was in excess of its jurisdiction and hence reviewable in this proceeding. In making this contention the petitioner strongly relies upon the case of *Stumpf* v. *Board of Supervisors,* 131 Cal. 364, [82 Am. St. Rep. 350, 63 Pac. 663], to support it. That was a proceeding to review the action of the board of supervisors of San Luis Obispo County in the matter of the attempted creation of a sanitary district under the provisions of the Statute of 1891 providing for the formation of such districts. Under that act proceedings were to be initiated by the presentation to the board of supervisors of a petition signed by twenty-five persons, residents and freeholders within the proposed district. The only showing before the board as to whether the signers of the petition were "residents and freeholders" within the proposed district was the unsworn statement of one of the signers of the petition. This court held that this was an insufficient showing upon which to base its finding and issue the call for an election. There are two essential differences, however, to be noted between the facts of the Stumpf case and those of the case at bar. In the Stumpf case the statute required that those signing the petition should be "residents and freeholders" within the district. In the case at bar all that the statute requires is that those signing the petition shall constitute a certain proportion of the qualified electors of the district sought to be annexed, "as shown by the registration of voters of the county in which such territory is situated." It will be seen at a glance that the quality and extent of proof that the signers of a petition are "residents and freeholders" of a certain district is much greater and requires a much more extended research to ascertain the facts than would be that required to ascertain that the signers of a petition are "residents and qualified electors" within a certain district, especially since the source from which the information in the latter case is to be drawn is

specifically pointed out to be the records of the last registration. The second important difference between the Stumpf case and the case at bar consists in the fact that the only showing made before the board in the former case as to the sufficiency of the petition in the respect indicated was the mere statement of one of the petitioners; while in the latter case the showing made before the city council as to the fact that the signers to the petition were residents and qualified electors of the district was to be found in the written report of the chief ministerial officer of the city council after making the investigation of the registration records prescribed by the statute under the express direction of that body. But aside from these divergencies there are certain expressions in the Stumpf case upon which the petitioner has laid emphasis which we do not regard as having been essential to the conclusions reached in that case and to which we are not disposed at this time to accord our full approval. It is stated in that case that where the determination of those questions upon which the jurisdiction of the board depended required the exercise of judicial power, and where the statute did not prescribe the character of the proof by which they should be determined, "they must be established in accordance with the rules of evidence recognized by the courts and the common law." We are of the opinion that the trend of both recent legislation and decision has been toward a relaxation of this rigid rule in respect to the procedure before official bodies chiefly political in their character and powers and only occasionally exercising judicial functions, with a view to upholding the action of such bodies which, though informal in some respect, is taken with a view to advancing the public interest and welfare of the community within the limited range of their jurisdiction. The instant case would seem to furnish an apt illustration of the class of tribunals and of cases to which the more modern and relaxed rule should be applied. The statute under which the proceedings before the city council were taken does not prescribe any procedure to be followed upon the presentation of the resident electors' petition in the way of prescribing a hearing thereon upon notice or in allowing time or opportunity for opposition or contest. The civil body is in no wise limited as to the method to be pursued in informing its members with respect to the sufficiency of the petition, but the statute does expressly limit them to

the source of their information and the extent of their inquiry. All that they are required to do is to compare the petition with the last registration of voters of the county in which the designated territory is situated. The county register of electors under the law regulating its contents would contain every fact required to be investigated in order to test the sufficiency of the petition. It would seem apparent, therefore, that the making of this comparison was the doing of a merely ministerial act. Had this act been done by all of the members of the city council acting individually and even going separately to the place where the register was kept, and each reporting to his fellow-members the result of his comparisons, it could hardly be contended that this would not have furnished a sufficient basis for a finding as to the facts and for the order calling the election, nor could the insistence upon a rigid rule of procedure go so far as to contend that each member of the civic body having so informed himself must be sworn as a witness in order to properly impart his knowledge to his associates. The same reasoning would seem to apply to the case where the city council instructs its clerk to perform this ministerial act and report the result to it. Having done this, to insist that this ministerial officer of the board who has already been sworn as such to the proper performance of his official duties must go through the formality of being again sworn as a witness before imparting the result of his comparison of the official records would be to carry a rule of procedure to a ridiculous extreme. We are entirely satisfied that the statute contemplates no such consequence and that in the case at bar the city council was sufficiently advised by the report of its clerk to make its finding that the petition before that body was sufficient as to the number and required qualifications of its signers, and to justify a finding to that effect and to order the special election.

The other points made by petitioner do not merit separate consideration.

Judgment affirmed.

Sloss, J., Wilbur, J., and Melvin, J., concurred.

ANGELLOTTI, C. J., Concurring.—I concur.

If we concede purely for the purposes of a decision, as does the opinion, that *certiorari* will lie in such a case as this (as

to which I have great doubt), it is perfectly clear that we are not concerned with any question as to the *manner* in which the council ascertained the facts upon the existence of which its power to order the election depended. A petition sufficient in form being filed, it was the duty of the council to ascertain *in such manner as it found best* whether it was sufficiently signed to empower and require it to call the election. If the petition was in fact sufficiently signed, which does not appear to be disputed, the power existed. As said in *People v. Ontario,* 148 Cal. 635, [84 Pac. 209] : "The duty of a board of trustees to determine whether or not a petition for an annexation election is signed by a sufficient number of electors is entirely implied from the fact that it has no power to order the election except upon a petition signed by that number. The statute nowhere in terms prescribes the necessity of such a determination or requires any record thereof to be made."