STATE, EX REL. SAMUEL R. LOOMIS ET AL., APPELLANTS, V. CITY OF LINCOLN ET AL., APPELLEES.

FILED FEBRUARY 4, 1930. No. 27265.

*Halleck F. Rose, George A. Adams* and *Herman Ginsburg*, for appellants.

*Frank A. Peterson* and *Lloyd E. Chapman, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and PAINE, District Judge.

DEAN, J.

College View is located in Lancaster county and adjoins. the city of Lincoln which has a population of more than 40,000 and less than 100,000 inhabitants. At an election holden April 2, 1929, the question of the consolidation of College View with Lincoln was submitted and voted upon by the electors of College View and the official returns disclosed that the consolidation carried by a majority of the

votes cast at the election. Thereupon the Lincoln city ordinance was duly amended so as to include College View within its boundaries as a part of the city.

Samuel R. Loomis, Charles A. Williams, Alfred C. Gourley, and Albert Hickman, relators herein, are members of the College View board of village trustees, and on June 14, 1929, as such officials, they filed an information in *quo warranto* in the district court for Lancaster county, directed against the city of Lincoln and certain of its public officers, as respondents, namely, Don L. Love, as mayor, and Ernest M. Bair, William Foster, William Schroeder, and Frank Harm, as members of the Lincoln city council, wherein the relators alleged that less than 20 per cent. of the qualified electors of College View, which the law requires, signed a petition for the submission of the question of proposed consolidation with Lincoln and that the subsequent election is therefore void and of no effect. The relators thereupon prayed that the respondents "be ousted and altogether excluded from the exercise of any authority or power of municipal government in and over the village of College View and the territory comprised within the territorial boundaries of said village as the same existed on and prior to April 29, 1929; that the relators be adjudged to be lawful incumbents and entitled to hold and exercise their offices as village trustees of the village of College View, and be restored to all their functions, rights and powers as such officers."

Three of the Lancaster county district judges, namely, the Honorables Frederick E. Shepherd, Jefferson H. Broady, and Elwood B. Chappell, sitting *en banc*, upon regular submission of the suit now before us on appeal, found that the petition contained the names of at least 20 per cent. of such qualified electors, as required by law, and that the election "was without fraud or mistake either on the part of the board of trustees or the election board." From the judgment so rendered the relators have appealed to this court.

The proceeding herein comes under the provisions of section 3790, Comp. St. 1922, which reads:

"Whenever a city of the second class or village adjoins a city of the first class having a population of more than forty thousand (40,000) and less than one hundred thousand (100,000), as well as other villages adjoining such city of the second class or villages or supplied in whole or in part with gas or with electric light or with street car service or supply from manufacturing or power plants and systems mainly located in and maintained and operated mainly from chief headquarters or offices within such city of the first class having a population of more then forty thousand (40,000) and less than one hundred thousand (100,000), then it shall be the duty of the officers of such cities of the second class and villages twenty days prior to such general city or village election to submit to the electors thereof at the first general city or village election after this act takes effect, and thereafter at any general city or village election whenever petitioned so to do by twenty per cent. of the qualified electors thereof, the question of the consolidation of such adjoining cities or villages with the city of the first class having a population of forty thousand (40,000) and less than one hundred thousand (100,000). Such question shall be submitted in substantially the following form, to wit:

" 'Shall the city of ——— be consolidated with the city of ——— having a population of forty thousand (40,000) and less than one hundred thousand (100,000)' or as the case may be 'shall the village of ——— be consolidated with the city of ———.'

"The ballot shall provide in the usual manner for a 'yes' and 'no' vote on the question."

On behalf of the relators a resident of College View testified that he was present when the petition for consolidation was submitted to the members of the village board and that at the time he informed the board that more than 67 of the persons whose names were written on the petition did not themselves sign the petition but that their names were written thereon, in some instances, by their wives, or by some other person without their knowledge or consent. This witness also testified that in his opinion the voting

population of College View at the time in question here consisted of about 2,500 persons and that the number of names on the petition was insufficient in that it was less than 20 per cent. of the qualified electors. He further testified that at the time the votes were counted he was ordered from the room and that, although the polls were closed at 8 o'clock, people were turned away from the polling booths at 7 o'clock and only those already in line were permitted to vote. Another witness, called by the relators, testified that at the election he made no objection to any of the proceedings nor did he hear any other person taking exceptions thereto.

From the evidence of the chairman of the board of trustees, who was called on the part of the respondents, it appears that, when the petition was considered, there was no objection made by any member as to its sufficiency. To substantially the same effect is the evidence of four or five others who were present at the board meeting. And the village clerk of College View certified that the petition contained 324 genuine signatures, and that such signatures represented 20 per cent. or more of the qualified electors of College View and that the petition was presented more than twenty days before the election as required by the statute.

An election judge who has been a resident of College View eight years testified that, as such election judge, he was present from the time the polls opened until they closed; that no ballots were misplaced nor were any destroyed; that when the polls closed the votes were counted and that 1057 votes were cast and the tally was correct and that, although the polls were closed at 7 o'clock, the line of people already there at the time were still voting at 8 o'clock. In respect of an incident wherein one witness complained that he was ordered from the room, this election judge testified that the witness was merely asked to step behind a railing so as not to interfere with the board in the counting of the ballots. And he denied that the election board, as charged, went away at any time and left the ballots uncounted at the polling place. Other members of

the election board testified to substantially the same facts. And one member of the board testified that about fifty people were present and watched the counting of the ballots and that no complaint was made at the time by anyone of any irregularities in the proceedings.

The relators offered in evidence an exhibit which purports to be a list of over 2,300 names of qualified College View electors, but on rebuttal this exhibit was withdrawn and another offered on which only 1,878 names were listed. The respondents, however, offered exhibits wherein it is clearly shown that there was only a total of 1,268 adult inhabitants resident in College View, at all times material to this suit, and without regard to their qualifications as voters. There is evidence tending to prove that a considerable number of fictitious signatures appeared on the relators' list of submitted names. To illustrate: One witness testified that his daughter was listed as a voter when in fact she had been away from College View four years and had never voted there. And it was disclosed that the names of school children and some deceased persons were all listed thereon as voters. The census taken by the respondents, however, discloses that a house to house canvass was made and, according to the evidence of the resident citizens who made the canvass, every adult inhabitant of the village was recorded and the total number, as noted above, disclosed only 1,268 adult inhabitants. In respect of the relators' list of inhabitants it totaled a much larger number, as above noted, inaccuracies occurred therein and in some instances names were duplicated and in others the names of persons who were deceased or had moved away were noted as voters.

In the decree rendered and subscribed by the three sitting judges to whom the case herein was submitted, *State v. Houston*, 94 Neb. 445, is therein cited wherein this language is used:

"The city clerk is required to ascertain and declare whether the requisite number of qualified signers have signed the petition for a recall election, and, in the absence of fraud or mistake, his determination thereof is not subject to review."

"The rule of law is that, where any official body or tribunal, such as a city council, is given authority to hear and determine any question, its determination is, in effect, a judgment having all the properties of a judgment pronounced by a legally created court of limited jurisdiction." *People v. Ellis,* 253 Ill. 369.

It does not appear to us that, in cases that may be pronounced political in trend or character, the extreme ultra-niceties of technical rules of construction should be applied. In a somewhat similar case in California, the court said:

"We are of the opinion that the trend of both recent legislation and decision has been toward a relaxation of this rigid rule in respect to the procedure before official bodies chiefly political in their character and powers and only occasionally exercising judicial functions." *Wolfskill v. City Council of Los Angeles,* 178 Cal. 610.

The cited rule appears to be applicable to the facts in the present case. Where a petition is submitted to a village board and contains the statutory signatures of 20 per cent. of the electors of such village, and the proposition therein contained is subsequently voted upon and carried by a majority of the voters at an election held therefor, the action of the city council, in the absence of fraud or mistake, in passing upon the validity of the proceedings is final.

"Municipal corporations are created for the public good; are demanded by the wants of the community; and the law, after the long continued use of corporate powers, and the acquiesence of the public in them, will indulge in presumptions in support of their legal existence." *Jameson v. The People,* 16 Ill. 257.

In respect of the objections urged by the relators, it appears to us that they were properly passed upon by the three learned trial judges at the hearing, and we are unable to discover reversible error in the conclusions at which they arrived and the judgment rendered pursuant thereto.

The judgment is

AFFIRMED.