[Civ. No. 755. Fifth Dist. Sept. 25, 1967.]

F. BARTELL TODD, Plaintiff and Appellant, v. CITY OF VISALIA et al., Defendants and Respondents.

McCormick, Moock & McCormick and Robert E. Moock for Plaintiff and Appellant.

N. O. Bradley, City Attorney, O'Melveny & Myers, Howard J. Deards, Urban J. Schreiner and Ray H. Lindman for Defendants and Respondents.

Wilson, Jones, Morton & Lynch and Robert G. Auwbrey as Amici Curiae on behalf of Defendants and Respondents.

CONLEY, P. J.—The plaintiff and appellant, F. Bartell Todd, a property owner in the proposed Visalia improvement district which was sought to be organized under the Municipal Improvement Act of 1913 (Sts. & Hy. Code, div. 12), attempted by this proceeding in administrative mandamus (Code Civ. Proc., § 1094.5) to restrain the formation and operation of the district. The trial court denied mandate and held that the improvement district in the center of the city, where it was proposed to install some 10 public parking lots and to accomplish street paving and improvement, including a mall, was properly organized and could carry on its proposed functions.

The appellant complains of two groups of violations. First, he contends that the district was not legally organized (1) because compliance with the required description of the proposed district as contained in the resolution of intention was not observed, and (2) because the city council did not comply with the statutory means of exercising its power to eliminate publicly owned property within the boundaries of the district from a duty to participate in payments with the consequence

that the assessments on all other parcels of land were inequitable and illegal. These two fundamental considerations involve jurisdiction in the organization of the proposed district; if the contentions are sound the district never legally came into being. The other group of complaints deals particularly with the appellant and his property in relationship to the district or to the property of other owners therein, and they were referred to in the written protest filed by Mr. Todd and in the oral evidence introduced by him at the meeting of the city council called to consider protests.

It is the contention of respondents that appellant has no right to urge the two first above-specified errors relative to the formation of the district, because he did not state them in his protest, citing and relying upon the cases of *Jeffery* v. *City of Salinas,* 232 Cal.App.2d 29 [42 Cal.Rptr. 486]; *Duncan* v. *Ramish,* 142 Cal. 686 [76 P. 661]; *Blake* v. *City of Eureka,* 201 Cal. 643 [258 P. 945]; *Roberts* v. *City of Los Angeles,* 7 Cal.2d 477 [61 P.2d 323]. However, respondents fail to distinguish between complaints which are applicable only to the property of the protesting party and those which involve jurisdiction to form the district. The proceedings to form an assessment district, which, in the course of its operations, would periodically require the payment of money by the persons whose lands are within its borders, are *in invitum.* To form such a district, the statutory requirements must be observed, and it was within the proper power of appellant to attack the existence of such a district without specifying such grounds in his formal protest because the essential steps necessary to its creation have not been taken.

The proceedings for the formation of the district here in question had their origin on November 2, 1964, through the passage of resolution No. 288 by the Visalia City Council in attempted compliance with the provisions of section 10200 of the Streets and Highways Code. This resolution in form was required, among other things, to describe a specification of the exterior boundaries of the district. In this respect, resolution No. 288 provided in section 2 thereof: ''For a description of said district reference is hereby made to a map of said district on file in the office of the said City Clerk and designated 'Map of Downtown Parking Assessment District No. 1', which map or plat indicates by a boundary line the extent of the territory included in the said proposed district and shall govern for all details as to the extent of said assessment district.''

A proper designation of the area of the proposed

district is an absolute essential to give notice to the public; without such notice, the district cannot be formed. It is universally held in this state that where a specific kind of notice is required to be given to the public as a condition precedent to the formation of a district, such legislative direction must be followed.

The general rule with respect to the creation of districts is thus stated in 52 California Jurisprudence, Second Edition, Waters, section 899, page 559: ". . . a statute authorizing the formation of districts must, to satisfy due process requirements, provide for some reasonable notice to persons legally interested in the subject matter. In doing so, the legislature may go beyond constitutional requirements and prescribe in detail, according to its will, the form and manner in which the notice shall be given.

"The notice provided for by statute is a necessary jurisdictional step in the proceeding. And the board is without power to proceed further until notice has been given to all persons pointed out by the statute as being entitled thereto. Actual knowledge on the part of the objecting parties is not a substitute, and does not confer jurisdiction on the board when the statutory procedure has not been followed."

In *O. T. Johnson Corp.* v. *City of Los Angeles*, 198 Cal. 308, 316-317 [245 P. 164], it is said with respect to an action brought to enjoin the City of Los Angeles and certain of its officers from expending any money in furtherance of a proceeding under the Street Opening Act of 1903: "The proceeding is *in invitum*. It is conceded by counsel for appellants that in such a proceeding the property owner 'is entitled to an accurate compliance with those specific requirements of the statute which the legislature deems important to safeguard his interests. These are the mandatory and jurisdictional provisions of the statute.' This statement is in line with the well-established rule that the requirements of the statute essential to jurisdiction must be complied with. (*Flynn* v. *Chiappari*, 191 Cal.139 [215 P. 682]; 19 Cal.Jur. 166-168, and cases cited.) An ordinance of intention properly affording notice is essential to the jurisdiction of the council to order the improvement. (*Pacific Paving Co.* v. *Verso*, 12 Cal.App. 362 [107 P. 590].) The act requires that the ordinance 'briefly describe the improvement proposed,' and it has been held that the description of the work as required by the statute is a jurisdictional prerequisite. (*Fay* v. *Reed*, 128 Cal. 357 [60 P. 927]; 19 Cal.Jur. 237, and cases cited.) 'Unquestionably the

giving of the notice required by the act is one of the steps necessary to confer upon the council jurisdiction to order the work done. "Proceedings for street assessments, being *in invitum*, must, in order to charge the property of the owner, be based upon a compliance with the provisions of the statute authorizing the work, in so far, at least, as those provisions have to do with the giving of notice or other steps precedent to the jurisdiction of the board to order the work done" ' (*Ferri* v. *City of Long Beach*, 176 Cal. 645 [169 P. 385].) The ordinance of intention must briefly describe the improvement proposed with reasonable certainty so that a person of ordinary understanding may know what is proposed to be done (19 Cal.Jur. 239, and cases cited), and the description of the improvement must not be so ambiguous as to be misleading. (*Piedmont Paving Co.* v. *Allman*, 136 Cal. 88 [68 P. 493].)'' (See also *Ferry* v. *O'Brien*, 188 Cal. 629 [206 P. 449]; *Yoder* v. *Board of Supervisors*, 208 Cal. 368 [281 P. 393]; *Beck* v. *Ransome-Crummey Co.*, 42 Cal.App. 674 [184 P. 431]; *Fay* v. *Reed*, 128 Cal. 357 [60 P. 927]; *Bay Rock Co.* v. *Bell*, 133 Cal. 150 [65 P. 299]; *Ferri* v. *City of Long Beach*, 176 Cal. 645 [169 P. 385]; *Pacific Paving Co.* v. *Verso*, 12 Cal.App. 362 [107 P. 590]; *County of Los Angeles* v. *Payne*, 82 Cal. App. 210 [255 P. 281]; *Ells* v. *Board of Supervisors*, 38 Cal.App. 480, 484 [176 P. 709]; *Bryant* v. *Board of Supervisors*, 32 Cal.App. 495 [163 P. 341]; 52 Cal.Jur.2d, Waters, § 894, p. 554.)

Respondents contend that because no one has specifically claimed that he was ignorant of the boundaries of the district, and because there was another map for a different purpose which happened to be on file in the clerk's office in connection with the city engineer's report, the requirements of the Municipal Improvement Act of 1913 for notice of the formation of the district may be disregarded. But as is said in *Ferri* v. *City of Long Beach, supra*, 176 Cal. 645, 647, with respect to an error in such notice: "Where the statute prescribes a certain kind of notice, a court is not justified in saying that some other kind of notice would be equally effective."

The map which respondents claim to be just as good for the purpose as the one required by the statute and stated to be on file in resolution 288 is marked "Visalia Parking District Assessor's Parcel Map," and is included in the blue-covered assessment papers, which are part of the engineer's report, marked "City of Visalia, California, Vehicle Parking and Improvement District No. 1," which was approved in resolu-

tion No. 289 of the City Council of the City of Visalia passed approximately 10 minutes after the enactment of resolution 288. Obviously, the work of very considerable proportions which went into the engineer's report and the assessor's appendage had been completed long before the passage of resolution 288; while such procedure is not improper (*Jeffery* v. *City of Salinas, supra,* 232 Cal.App.2d 29), it is somewhat curious, it seems to us, for the respondents to rely upon a map prepared for another purpose and the filing of which was not due until after the passage of resolution 288.

We conclude that strict adherence to the requirements of the code section relative to notice was necessary. The city had a mayor and council, a city manager, a city engineer, and the advantage of two specially hired experts—one a lawyer and one an assessment engineer. Observance of the requirements of the law and the provisions of the resolution of intention should have been unexceptionable.

In 24 California Jurisprudence, Second Edition, Highways and Streets, section 85, page 759, it is said: "The giving of the notice in the matter prescribed by the legislature is necessary to the jurisdiction of the council to undertake the improvement, notwithstanding the property owner may have actual knowledge of the intention to improve."

The second subject concerning which the appellant claims that the city council did not comply with the necessary statutory requirements for the formation of the district is its method of attempted elimination from the assessment base of the publicly owned parcels of land within the proposed district. Under the law the exclusion of such property must be effected in the resolution of intention. Instead of eliminating such property in the only way authorized by law in the resolution of intention attempted exclusion is based wholly on the engineer's report, which was authorized in resolution No. 288, and which was filed in complete form within 10 minutes thereafter and approved by resolution 289. The respondents claim that under the Municipal Improvement Act of 1913 this method of accomplishing the desired result was within its rights and that the exclusion of the publicly owned lands by means of that report was in effect a proper alternative method of treatment under the 1913 Act. The law does not support such a contention. Section 10206 of the Streets and Highways Code reads as follows: "The provisions of the Improvement Act of 1911 relating to assessments on publicly owned prop-

erty and railroad property, are incorporated in this division as if fully set out herein.''

Sections 5301 and 5302 of the Streets and Highways Code prescribe the only procedure, other than finding that the lands would not be benefited, for omitting from assessment publicly owned lands which are included within the outside boundaries of the district to be benefited. These sections read as follows: ''§ 5301. If any lot or parcel of land belonging to the United States, or to the State, or to any county, city, public agent, mandatory of the government, school board, educational, penal or reform institution or institution for the feebleminded or the insane, is in use in the performance of any public function, and is included within the district to be assessed to pay the costs and expenses thereof, the legislative body may, in the resolution of intention, declare that such lots or parcels of land, or any of them, shall be omitted from the assessment thereafter to be made to cover the costs and expenses of the work.''

''§ 5302. If any such lots or parcels of land are omitted from the assessment, the total expense of all work done shall be assessed on the remaining lots or parcels of land lying within the limits of the assessment district, without regard to such omitted lots or parcels of land.''

Section 5302.5 of the Streets and Highways Code provides the procedure to be followed if the publicly owned land is not omitted from assessment. This section reads in part as follows: ''If the legislative body, in the resolution of intention, declares that any lot or parcel of land owned and used as provided in Section 5301 shall be included in the assessment, or if no declaration is made respecting any such lot or parcel of land then any assessment upon such lot or parcel of land, except any lot or parcel owned by the United States or any department thereof or by the State of California or any department thereof, shall be an enforceable obligation against the owner of such property and shall be paid, within 30 days after the date of recording the assessment, by the officer, officers, or board having charge of the disbursement of the funds of the owner of such lot or parcel of land and, if not paid within said 30 days, shall bear interest until paid at the rate stated in the resolution of intention for the bonds proposed to be issued, and if no bonds are proposed to be issued then at the rate of six percent (6%) per annum until paid; provided, however, that if said assessment is not paid within said 30-day period the city may, and if the city has so provided in its

resolution of intention shall, at the expiration thereof, forthwith advance the necessary sum and pay the assessment and shall collect the amount of paid assessment and interest thereon from the said obligated owner and may enforce the collection thereof by writ of mandate or other proper remedy.''

Our Supreme Court has held in the case of *Bing* v. *City of Duarte,* 65 Cal.2d 627, 636 [55 Cal.Rptr. 920, 422 P.2d 608], that under the law the only method by which publicly owned property may be excluded is in the resolution of intention. In that case, it is said that the adoption of the resolution of intention ''is the step at which section 5301 permits [the council] to omit from the assessment publicly owned and used land which is included in the district''—and it is stated that the Legislature intends that publicly owned land may be omitted ''only by provision made in, and at the time of the adoption of, the resolution of intention.''

It is important to keep in mind that there is a basic difference between excluding public property from an assessment district simply because it is public property, and excluding such property because it will not be benefited by its inclusion. Excluding public property simply because it is public property is strictly a policy decision and shifts to the remaining taxpayers within the assessment district the burden of paying the share of taxes which otherwise would have been charged against the city. On the other hand, when public property is excluded because it is not benefited, it is treated in the same method as any other property and the taxpayers are not prejudiced thereby.

Streets and Highways Code section 10206 (of the Municipal Improvement Act of 1913) permits exclusion of public property without reference to benefits derived therefrom in accordance with the provisions of the 1911 Act. Under the 1911 Act the decision to exclude must be made by the legislative body when it *adopts* its resolution of intention. If nothing is said in that connection when the resolution of intention is enacted, the public property is deemed included in the district. Consequently, under the Municipal Improvement Act of 1913 the decision to exclude public property as a matter of policy must be made when the resolution of intention is actully adopted, and not thereafter.

Section 10200 of the Streets and Highways Code, in referring to the contents of the resolution of intention, states emphatically that the description of the boundaries of the

proposed assessment district must be specified. Although this may be done in several alternative ways, it must be done at the time the resolution of intention is adopted, and not thereafter. After the proposed boundaries have been determined in the resolution a report is secured from the engineer. Under section 10204 of the Streets and Highways Code the duties and functions of the engineer who makes the report are clearly prescribed. Among other duties, he prepares the plans and specifications for the proposed improvements and an estimate of the cost of improvement. Moreover, he is required to prepare a diagram showing the assessment district and the boundaries and dimensions of the subdivisions of the land within the district as they existed at the time of the passage of the resolution of intention. This clearly means that the legislative body and not the engineer fixes the boundaries of the proposed district which, of course, can be later changed as to certain lands which are not benefited. Moreover. the engineer reports a proposed assessment of the total amount of costs and expenses of the proposed improvement upon the several subdivisions (see subd. (e)). This simply means that he correlates the cost of the improvement with the assessment of the land and determines the amount of assessment against each parcel of land within the proposed boundaries which he deemed will be benefited. And, he can do this only if he knows what land will be included within the district, but he does not make the policy decision as to whether public lands will be excluded irrespective of whether they are benefited or not. To the contrary, it would be his obligation to propose the assessment attributable to each parcel of land within the proposed district, based on benefits whether the land is public or otherwise, and to recommend exclusion of only that public land that will not be benefited.

The way the matter was handled in the instant case indicates that the engineer knew beforehand that public land was going to be excluded, and yet there was no such indication in the resolution of intention.

It should also be noted that the taxpayer would not receive adequate notice unless the declaration to exclude public property from a proposed district as a matter of policy is stated in the resolution of intention. A taxpayer who was satisfied with the proposed area of the district as described in the resolution of intention, and who had confidence that the assessment would be spread by the legislative body on an equitable basis. would have no way of knowing that it was the secret intent of the legislative body to exclude public property as a matter of

law. To the contrary, by taking into consideration the requirements of the Improvement Act of 1911 which were adopted by the 1913 Act, he would necessarily assume that the intent of the legislative body by adopting resolution No. 288 was to include all public land.

The assessor's insert in the engineer's report shows numerous parcels of land owned by the City of Visalia and by the County of Tulare which were thus given exemption from assessment; the illegal exclusion of these parcels of land necessarily prevented a just spreading of the assessment.

In addition to the general objection to the improper exclusion of publicly owned land, the appellant calls specific attention to two parcels, numbers 126 and 127 on the assessor's map, which were owned by the City of Visalia with the intention of ultimately constructing civic buildings on them, but which at the time were actually used by individual renters on a month-to-month tenancy basis. One of them was being occupied by an automobile accessory business and the other as a residence, and neither at that time was employed in the performance of municipal functions. Even if those two parcels had been specified in the resolution of intention (resolution No. 28) as required by law, they would not have been entitled to be omitted from the assessment.

We now turn to the specific objections which were made in the written protest of the appellant and in the oral testimony produced by him at the hearing of December 7, after which the council overruled all protests and ordered the formation of the assessment district to proceed.

Initially, the appellant objects to the fact that Mr. Urban J. Schreiner of the firm of O'Melveny & Meyers, one of the attorneys hired specially by the city in connection with the proceedings to form the district. had made a contract with the city for an attorney's fee with his maximum payment contingent upon the successful formation of the district. This contention is completely devoid of merit. An attorney has a right to contract for compensation for his services, and it was not improper for him to secure a contingent provision based upon success.

Next, appellant argues that the record "is devoid of any testimony which justifies the selection of the property owners within the proposed district as a group which will pay for the paving of their own streets as well as paying their share of the paving of all the streets in the city." Appellant seems to forget that this court does not have the right to retry the

case or to use its judgment as to whether the city council was right or wrong in its factual conclusions relative to the advisability of forming the district. Our function is limited to ascertaining whether or not there is substantial evidence to support the finding of the council. (*Jeffery* v. *City of Salinas, supra,* 232 Cal.App.2d 29, 35; *Thompson* v. *City of Long Beach,* 41 Cal.2d 235, 240 [259 P.2d 649]; *Fascination, Inc.* v. *Hoover,* 39 Cal.2d 260, 264 [246 P.2d 656].)

If there was any substantial evidence to support its conclusion, we would be powerless to require a conflicting result. The question may arise whether there was any evidence heard by the city council. Not a single witness was sworn; not a single affidavit was introduced in evidence. It is frequently said that a council sitting as this one did was engaged in quasi-judicial operations.

Section 1878 of the Code of Civil Procedure thus defines a witness: "A witness is a person whose declaration under oath is received as evidence for any purpose, whether such declaration be made on oral examination, or by deposition or affidavit."

In section 1846[1] of the Code of Civil Procedure it was provided, in part: "A witness can be heard only upon oath or affirmation. . . ."

In 2 California Jurisprudence, Second Edition, Administrative Law, section 157, page 263, it is said: "The requirement that the testimony of witnesses be given under oath is a fundamental principle of law which may not be excused by mere implication." (See also *Scannell* v. *Wolff,* 86 Cal.App.2d 489, 494 [195 P.2d 536]; 54 Cal.Jur.2d, Witnesses, § 2, pp. 199-200.)

However, the case of *Estate of Da Roza,* 82 Cal.App.2d 550, 555-556 [186 P.2d 725], indicates that when there is no objection to the giving of unsworn testimony during a hearing, the courts will consider that there has been a waiver of the right to require sworn testimony.

At the protest hearing on December 7, no witness was sworn on either side, and some of the technical experts called by the city gave long and somewhat general unsworn testimony concerning various facts; no one made any objection to this procedure. (See also 98 C.J.S., Witnesses, § 320(e), pp. 22-23). The question is not raised on appeal by either side, and

---

[1]This section has been repealed (Stats. 1965, ch. 299, § 43, p. 1360) operative January 1, 1967; the subject matter of the repealed section is covered by Evidence Code sections 710, 711.

we shall assume, in considering the other points made by the appellant, that there was a waiver to object to the competency of the testimony.

We conclude that there was substantial, though conflicting, evidence not only as to the legitimate selection of the property owners generally within the district, but with regard to the fairness of the treatment of the protesting party, and that it supports the conclusion of the city council and also that of the superior court. (*Howard Park Co.* v. *City of Los Angeles,* 119 Cal.App.2d 515 [259 P.2d 977].)

The contention by the appellant that the Municipal Improvement Act of 1913 does not authorize the building of parking lots is contrary to the holding in *Jeffery* v. *City of Salinas, supra,* 232 Cal.App.2d 29. In that opinion it is properly said that public off-street parking lots are "works and improvements" of a local nature, and that they may be included in an assessment district created pursuant to the 1913 Act.

Objection is also made to the fact that the then mayor, Elson Gaebe, owned land within the district and that, although he did not vote, he nevertheless participated, as mayor presiding, at the meeting of December 7, at which protests were heard and denied by vote of the other members of the council. It is also contended that the voting members of the city council did in fact investigate the questions involved outside of the hearing room and that their votes were swayed by reason of this additional information which was not placed on record.

A city councilman is elected usually because of his acquaintanceship and popularity. He may not be instructed on many of the technical matters as to which he is called upon to pass judgment. He is frequently an extrovert, who circulates widely in the community and talks with businessmen and voters about all sorts of questions that may come before the council. He is a legislator, an administrator, and at times a quasi-judicial officer. In the present instance, it would be strange if the members of the council living and working in Visalia did not have considerable cognizance of what was going on in the city, of the efforts of some people to form the present assessment district and of the municipal needs in this respect, fanciful or actual.

As a matter of necessity, it has been held that a city councilman is not disqualified to act in a matter of this kind because of some personal interest, direct or indirect, in the outcome.

(*Jeffery.* v. *City of Salinas, supra,* 232 Cal.App.2d 29, 39-40; *Raisch* v. *Sanitary Dist. No. 1,* 108 Cal.App.2d 878, 884 [240 P.2d 48]; *Grosjean* v. *Board of Education,* 40 Cal.App. 434, 441 [181 P. 113].) If such considerations disqualified councilmen in the same way that judges would be disqualified in similar situations there would often be nobody to act upon a proposal such as is involved here. (*Federal Constr. Co.* v. *Curd,* 179 Cal. 479, 492-497 [177 P. 473].)

While we speak of councilmen in a situation of this kind as performing quasi-judicial work, it by no means follows that the same standard of ethics that controls judges should also control councilmen. We point out that in the present case there is no specific evidence that any of the councilmen took into consideration facts outside of the record to affect their votes, and we accordingly treat this charge in appellant's brief in the words of a Scotch verdict as ''Not proven.''

The argument that the assessment district should be eliminated on the ground that Mr. Todd, who owned the store occupied by Sears Roebuck together with a large parking lot, was not treated fairly because the benefit was not the same as that accorded other store properties in the vicinity, which did not have parking space (*Safeway Stores, Inc.* v. *City of Burlingame,* 170 Cal.App.2d 637 [339 P.2d 933]; *San Diego Gas & Elec. Co.* v. *Sinclair,* 214 Cal.App.2d 778 [29 Cal.Rptr. 769]), cannot avail the appellant because there was substantial evidence that there would be benefits accorded to Mr. Todd through the presence of additional parking facilities now and in the future.

By reason of the fact that the assessment district was not created in accordance with the requirements of the law as specified in the early part of this opinion, it is ordered that the judgment of the trial court is reversed, and the trial court is directed to execute new findings and a judgment in accordance with this opinion.

Gargano, J., concurred.

Stone, J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied October 23, 1967. Stone, J., did not participate therein. Respondents' petition for a hearing by the Supreme Court was denied November 22, 1967. Peters, J., was of the opinion that the petition should be granted.