[L. A. No. 2015.  In Bank.—May 12, 1908.]

F. E. HASKELL, and R. SMITH, Appellants, v. CITY OF LONG BEACH et al., Respondents.

MUNICIPAL CORPORATIONS—ELECTION TO ANNEX TERRITORY—MARKING OF BALLOTS—GENERAL ELECTION LAW.—Under the statute of 1889, as amended in 1905, providing for the annexation of territory to incorporated cities and towns, and for the holding of a special election for that purpose, and making the general law applicable, so far as may be practicable, to the ballots used at such election, the opening and closing the polls and the holding and conducting of such election, the counting of ballots, and making of returns by the election board, is not intended to make the general law applicable to the mode of marking the ballots so as to indicate the intention of the voters as to the proposition submitted to them for or against annexation, and they may express such intention by marking the ballot in any manner which will indicate it.

ID.—DIRECTION IN NOTICE OF ELECTION NOT MANDATORY.—A direction in the notice of election that, "to vote, stamp the cross in the voting square," etc., is directory merely, and non-compliance therewith will not invalidate a ballot so long as it appears from any mode of stamping the ballot that the voter has indicated his choice to vote for or against annexation.

ID.—DISTINGUISHING MARK.—The failure to stamp the cross in the voting square, and the stamping of the same anywhere between the parallel lines indicating "For Annexation" or "Against Annexation" does not make the cross a "distinguishing mark."

ID.—LIBERAL CONSTRUCTION OF BALLOT—EFFECTIVENESS.—The ballot should be liberally construed, and the intendments should be in favor of a construction which will render the ballot effective, rather than one which will, on a technical ground, render it ineffective.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

M. P. Goodrich, City Attorney of San Pedro, J. S. Chapman, and Ward Chapman, for Appellants.

George A. Skinner, City Attorney of Long Beach, and Lawler, Allen, Van Dyke & Jutten, for Respondents.

LORIGAN, J.—Plaintiffs appeal from a judgment in favor of defendants and from an order denying their motion for a new trial.

This action was brought to set aside and annul an attempted annexation by the city of Long Beach of certain territory on Terminal Island, lying between the cities of Long Beach and San Pedro in Los Angeles County. The plaintiffs are residents and taxpayers of the territory sought to be annexed and bring the action on the ground that at a special election held for the purpose of determining whether annexation should be made, such attempted annexation was in fact defeated by a majority vote of the electors in the territory sought to be annexed, and that the finding of the election board of the election precinct embracing that territory, and the finding of the board of trustees of the city of Long Beach, after a canvass of the votes cast, to the contrary, were both void.

The proceedings for the annexation of the territory in question were had under the statute of 1889, as amended in 1905, providing for the alteration of boundaries of, and for the annexation of territory to, incorporate cities and towns (Stats. 1889, p. 358; Stats. 1905, p. 551). There is no question in the case as to the regularity of all the proceedings relative to the special election at which the proposition for the annexation of the territory in question to the city of Long Beach was voted on. In order to affect annexation of outside territory to an incorporated city it is necessary under the statutes above referred to that at a special election held for that purpose there shall be a majority vote in both the municipality and in the territory to be annexed in favor of the proposition of annexation then submitted. The vote in the election precincts embracing the city of Long Beach was largely in favor of the proposition, but it is insisted by ap-

pellants that in reality the proposition was defeated by a majority vote of the electors in the territory sought to be annexed. In the election precinct which embraced that territory there were cast 146 ballots. The election officers of the precinct in the count of the ballots unanimously rejected one ballot as improperly marked, and that this was proper is not questioned. The election board certified that 145 legal votes had been cast, of which there were found 73 in favor of annexation and 72 against it, and that the proposition to annex the territory had been carried by a majority of one and the returns being delivered to the board of trustees of the city of Long Beach were canvassed by that body and the same result declared.

The action of the plaintiffs was based upon a claim that the certificate of the election officers was false; that the officers counted certain ballots which were illegal and void and which should have been rejected; that in fact according to the legal ballots cast the proposition for annexation, instead of being carried by a majority of one had been defeated by just that majority.

Facsimiles of the ballots the legality of which are questioned, are set forth in the record. There are four and their validity or invalidity is the only question in the case which requires consideration. The resolution passed by the board of trustees of the city of Long Beach calling such special election, and the notice of election prescribed the form of ballot to be used with instructions in said notice of election to the voters as follows: "To vote, stamp a cross (X) in the voting square to the right of and opposite the answer you desire to give; all marks except the cross (X) are forbidden; all distinguishing marks or erasures are forbidden and make the ballot void." These instructions were also printed on the ballots which were otherwise similar to that required by section 1197 of the Political Code, and a copy of the form of ballot furnished the voters at their election in question is as follows:—

| 1 | For Annexation | |
| 2 | Against Annexation | |

Two of the ballots in question had a cross stamped after the words "For Annexation" and one of them had a cross after

the words "Against Annexation," but on each the cross was stamped in the parallelogram to the left of what was intended on the ballot to be the voting square and not in the square itself. The fourth ballot was marked with a cross to the left of the words "For Annexation" and stamped in the square containing the number "1."

The trial court held these four ballots to be legal and to have been properly counted. Appellants contend that this was error and that such ballots should have been rejected.

It is provided by the first section of the act under which these annexation proceedings were had that "such notice" (the published notice of the resolution of intention to hold an annexation election) "shall distinctly state the proposition to be submitted, i. e., that it is proposed to annex to, incorporate in, and make a part of such municipal corporation the territory sought to be annexed, specifically describing the boundaries thereof; and in said notice the qualified electors of said municipal corporation, and the qualified electors residing in said territory so proposed to be annexed, *shall be invited to vote upon such proposition by placing upon their ballots the words 'for annexation' or 'against annexation' or words equivalent thereto.*"

It is further provided in said act that "the ballots used at such election, the opening and closing of the polls, and the holding and conducting of such election shall be in conformity, as far as may be, with the general laws of this state concerning elections"; and further that in counting the ballots and making returns the election board should do so "as nearly as practicable in the manner provided in the election laws of this state."

It is insisted by appellants that under the latter provisions of the act it was intended primarily and unqualifiedly to preserve in such elections all the safeguards minutely provided for in the general election law and to make its provisions applicable; that, under the provisions of that law in order to make a ballot legal and valid, it must be stamped with a cross in the square provided for that purpose; that this provision is mandatory and that as the four ballots in question here, having the cross stamped in places other than the voting square where the mandatory provision of the general election law required them to be, were invalid and should have been rejected.

Conceding, without deciding, this position of appellants to be correct if the validity of ballots cast at an election under the Annexation Act are to be tested by the provisions of the general election law, still it is insisted by respondents that in an election of the kind here involved the electors are not bound by the provisions of the general election law as to how they shall mark their ballots so as to indicate their intention with reference to the proposition of annexation submitted to them; that under the act they are not controlled in their expressions of intention by these provisions of the general election law but may express such intention by marking the ballot in any manner which will indicate such intention on the subject of annexation.

We think this position of respondents is correct. It will be observed that under the provision of the Annexation Act which states how the voter shall be invited to express his choice of the proposition of annexation there is no requirement that that choice shall be indicated in any particular manner. Nor in the provision making the general election law in certain respects applicable to elections held under the act is there any such explicit language used as would indicate that such choice must be made by marking the ballot in the voting square and nowhere else. If it was intended that such law, in this particular, should be applicable to elections under the act, it is only reasonable to assume that the legislature would have so declared. The provision in the act that "the ballots used at the election, the opening and closing of the polls, and the holding and conducting of such election shall be in conformity, *as far as may be,* with the general laws of the state concerning elections" is not an express requirement that the ballots shall be marked in the particular voting square, where under the general election law it is required that the cross shall be placed. The expression used in this particular provision "as far as may be" and the expression in the section of the act heretofore referred to relative to the counting of the ballots by the election board and the returns, and requiring that this shall be done "as far as practicable" according to the provisions of the general election law indicates that some relaxation of the requirements of that general law as to all these matters was permitted. Of course, these expressions, on account of their indefiniteness, render it very difficult to

determine just to what extent it was intended that the pro-
visions should be relaxed, but we think that the expression
"as far as may be" found in the provision in reference to the
ballots and the holding and conducting of the election, was
used in view of the fact that the prior provision of the act
relative to the method in which the elector might express him-
self on the proposition of annexation was quite liberal as to
the method whereby that choice might be indicated, and that
it was not intended to curtail it in any respect. That prior
provision is that the "qualified electors residing in said ter-
ritory so proposed to be annexed shall be invited to vote upon
such propositions by placing upon the ballots the words 'For
Annexation' or the words 'Against Annexation' or words
equivalent thereto." By this provision any method of indi-
cating his wish upon the subject, either by placing upon the
ballot "For Annexation" or "Against Annexation," or "words
equivalent thereto" was permitted, and, as we say, it was
doubtless the intention of the legislature, while providing
that the general election law should apply to elections under
the Annexation Act, "as far as may be," to relax the provisions
of that law as to marking in the voting square and to permit
the expression of the voter to be indicated by marking the
ballot in any manner which would clearly and reasonably
indicate such choice. It will be observed that under the first
provision of the act inviting the voters to indicate their choice
on the proposition submitted by the use of the words there
mentioned or equivalent words it is not required that the bal-
lot furnished to the voter shall have these words or any
equivalent words printed on it. The city of Long Beach
might have provided a blank form of ballot which would have
permitted the voter, as the section permitted him, to indicate
his choice by writing thereon the words specially mentioned
in the provision or other equivalent words. The municipality
could, it is true, print on the ballots furnished the voters the
words "For Annexation" or "Against Annexation." This
would be a substantial compliance with the statute as was held
in *People* v. *Los Angeles,* 133 Cal. 345, 346, [65 Pac. 752], as
far as submitting the proposition to the choice of the voters.
At the same time it would not have interfered with the right
of the voter, or limited that right, as to the mode he might
adopt in giving expression to the alternative choice submitted

to him.  In the case last cited it appears that in the annex-
ation election in question there a ballot similar to the one
used in this election was submitted to be voted on with similar
instructions to the voter to place the cross in the square.
While the precise point made here does not appear to have
been involved in the case cited, still the court in holding that
such a ballot might be provided for the election and would be
a substantial compliance with the first provision of the An-
nexation Act, says as to the effect to be given to the ballot
where so provided and used that "it (the ballot) should be
read in the light of all the circumstances surrounding the
election and the voter, and the object should be to ascertain
and to carry into effect the intention of the voter, if it can be
determined with reasonable certainty.  The ballot should be
liberally construed and the intendments should be in favor
of a reasoning and construction which will render the ballot
effective rather than some conclusion which will, on a technical
ground, render it ineffective.  (*Behrenmeyer* v. *Kreitz,* 135
Ill. 595, [26 N. E. 705].)"

If the provision of the General Election Law was to
be applied as appellants insist it should, it would be a
restriction and limitation of the liberal method which the
Annexation Act itself offered the voters to ·express their
choice, and while the legislature might make such a restric-
tion, notwithstanding the method was otherwise liberally
extended, we should not construe a provision which is in-
definite and doubtful on the subject as having accomplished .
that result.  Under this view, we perceive no reason why these
ballots should not be held valid.  The voter has clearly in-
dicated by his manner of voting his choice upon the proposi-
tion.  The only purpose of the annexation law is to ascertain
the wishes of the voters upon the subject—the number of those
voting in the affirmative and those voting in the negative—
and it is apparent from the general language used that great
liberality was intended to be afforded to the voter in ex-
pressing his choice, and that any method which the voter
adopted filled this requirement.  All that is necessary is that
it be manifest from the ballot of the voter that he has clearly
indicated his choice upon the subject, and in using a cross to
indicate such choice it is not necessary under the annexation
act that he use it in conformity with the general election law.

and that he should place it in the voting square. It is necessary only that he so use it that its use leaves no doubt as to how he intended to vote upon the proposition. When he has done this he has complied with the annexation law as to voting and the vote must be counted. Now, take the ballots in question. · There can be no doubt but that the two voters who placed a cross in the parallelogram to the right of the words "For Annexation" intended to vote affirmatively upon the proposition; neither can there be any doubt that the one who stamped the cross in the same place after the words "Against Annexation" intended to vote negatively on it; nor can it be doubted that the voter placing the cross in the numeral square to the left of the words "For Annexation" intended to vote in behalf of the proposition. So that the intention of the voter being clear from the ballot the purpose of the provisions of the annexation law was accomplished in the method it allowed and the votes were legal and valid.

This being true, it cannot be, as suggested by counsel for appellants, that these crosses, as placed by the voters, were distinguishing marks. The crosses were placed on the ballot where the voter had a right legally to place them, and hence, are not subject to the objection that they constituted distinguishing marks. (*Tibbe* v. *Smith,* 108 Cal. 108, [49 Am. St. Rep. 68, 41 Pac. 454].)

It is insisted, however, by the appellants that even if the provisions of the general election law as to placing the cross in the voting square is not applicable to the election held under the Annexation Act, still the notice of election given by the board of trustees of the city of Long Beach and the directions on the ballots requiring that "to vote, stamp the cross (X) in the voting square to the right of and opposite the answer you desire to give" was a mandatory requirement and non-compliance therewith rendered the ballots in question invalid. There is no merit in this claim. While counsel for appellants have cited a number of cases in support of this proposition they are cases where elections were held under the general election laws. But as we have concluded that the provisions of the general election law are not applicable under the terms of the Annexation Act,—at least to the extent of marking the ballot by placing the cross in the voting square—there is nothing in the act anywhere authorizing the board of trustees to

prescribe any directions as to placing the cross in a voting square. The statute, as we have seen, is quite liberal in its terms and allows the voter to adopt any method of stamping a cross on his ballot which will show the intént with which he voted on the proposition submitted. While it was not improper in the notice of election to direct the voter where he should mark his ballot so as to best evidence his intention, still such directions could not have the force of mandatory provisions because they are not authorized by any provision of the Annexation Act. In order to be mandatory it must at least appear that the directions were warranted by some provision of law. There being no such provision, the directions on that subject by the board in the notice of election and on the ballots was directory merely and non-compliance therewith did not invalidate the ballot so long as it appeared from any mode of stamping thereon that the voter had clearly indicated his choice on the submitted proposition.

While some other points are made by the appellants as to the canvass of the vote by the board of trustees of the city of Long Beach and upon the findings made by the court, we do not perceive that they present any errors which would call for a reversal of either the order or the judgment, and they are both affirmed.

Henshaw, J., Angellotti, J., Shaw, J., and Sloss, J., concurred.