[L. A. No. 2239.   Department One.—June 9, 1909.]

# THE PEOPLE ex rel. E. T. SCHOLLER, Respondent, v. CITY OF LONG BEACH, Appellant.

MUNICIPAL CORPORATIONS — ANNEXATION OF TERRITORY — QUALIFIED ELECTORS—TEMPORARY RESIDENTS.—At an election held under the act of March 19, 1889 (Stats. 1889, p. 358), for the purpose of determining whether contiguous territory should be annexed to a municipality, no one is entitled to vote in the territory proposed to be annexed unless he was at the time a permanent resident of the territory, in the sense that he would be a qualified elector therein at a general election if, prior thereto, his residence therein had continued for the required time. A mere summer resident, without intent to remain in the territory, is not a qualified elector.

ID.—ILLEGAL ANNEXATION—ESTOPPEL OF STATE TO QUESTION LEGALITY —LACHES—ANNEXATION TO OTHER CITIES.—The state, by merely permitting an interval of nineteen months to elapse after the annexation proceedings had culminated, before commencing *quo warranto* proceedings to test the validity of the attempted annexation, is neither estopped nor precluded by its laches from making inquiry into the validity of the annexation, when it appears that during such interval, the validity of the annexation was being questioned at the suit of a private person, and that during that time, portions of the territory had been annexed to other municipalities.

ID.—FREEHOLDERS' CHARTER—POWER TO ANNEX ADJACENT TERRITORY.— A freeholders' charter, prepared by an existing municipality for its own government in accordance with the provisions of section 8 of article XI of the constitution, is only operative over such territory as is already erected into the municipality. The constitution has not delegated to cities the power, in framing their charters, of annexing adjacent territory, without consulting the inhabitants of that territory.

ID.—BOUNDARY OF CITY—TERRITORY ILLEGALLY ANNEXED—APPROVAL BY LEGISLATURE.—Where a freeholders' charter adopted by a city, in describing its boundaries includes therein adjacent territory previously attempted to be but not legally annexed thereto, and such charter is subsequently approved by the legislature, such action does not have the legal effect of fixing the city's boundaries so as to include the territory illegally annexed.

ID.—MUNICIPAL AFFAIR—ANNEXATION CONTROLLED BY GENERAL LAWS. —The annexation of territory to a city is not a municipal affair, within the meaning of section 6 of article XI of the constitution, but is a matter pertaining to the state at large and within its general powers and functions, and the general law upon that subject controls. The act of 1889 (Stats. 1889, p. 358), is such general law,

and provides the exclusive method for the annexation of territory to existing cities.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Stephen G. Long, and Ralph C. Harrison, for Appellant.

U. S. Webb, Attorney-General, Henry Stieglitz, and J. W. McKinley, for Respondent.

Leslie R. Hewitt, and Joseph H. Call, *Amici Curiæ*, for Respondent.

SHAW, J.—This is an action in *quo warranto* to determine the right of the defendant, as a municipal corporation, to exercise corporate jurisdiction and control over certain adjacent territory comprising a seaside summer resort now usually known as Terminal Island.

A proceeding was had under the act of March 19, 1889 (Stats. 1889, p. 358), for the purpose of annexing this territory to the city of Long Beach. An election to determine such annexation was held on August 16, 1905. In the territory proposed to be annexed the election officers made return that 73 votes were cast in favor of the annexation and 72 votes against it. The vote in the original city being favorable, a record of the result was made and certified to the secretary of state and filed by him on August 22, 1905, and ever since that date the said city has claimed the right to exercise municipal control over the said territory, upon the theory that it had been duly annexed to the city by said proceeding.

The same proceeding was under consideration by this court in *Haskell* v. *Long Beach,* 153 Cal. 543, [96 Pac. 92], a suit by a private person. In that case certain alleged informalities and defects in the ballots cast at the annexation election were held to be lawful and the attempt to annul the proceedings in that action failed.

In the case at bar the complaint alleged that seventeen persons who voted in favor of annexation at the election in the territory to be annexed were not at that time residents of said

territory, hence not entitled to vote, that a majority of the legal votes cast in said territory was against the annexation, and that therefore the proceeding was void. This question was not presented in the Haskell case. The court below found that two of these persons, Patterson and Blankenhorn, were not, at the time, residents of the territory and were not lawful voters at said election, that they voted thereat in favor of annexation, and that without these votes there was not a majority for the annexation. Upon this ground judgment was given declaring that the territory was not a part of the city of Long Beach. Appeals are taken both from the judgment and from an order denying defendant's motion for a new trial. A bill of exceptions presents the evidence on the subject.

The evidence shows that for some years prior to 1905 these two persons had been residents and householders without the territory, each living with his family in a house owned by himself, Mr. Patterson in Los Angeles, and Mr. Blankenhorn in Pasadena, and that it had been customary for each of them to live with his family at Terminal Island for several months in the summer season, usually the months of July, August, and September, each returning to his home at the end of the outing. Patterson owned the house which he occupied at Terminal Island. Blankenhorn rented and occupied a furnished house while there. This custom they followed in 1905, going to the seaside with their respective families about the first of July and returning the latter part of September. Neither of them testified that at the time he was there in 1905 he had any intention to make Terminal Island his home, or to reside there permanently, and there were many circumstances in evidence indicating the absence of such intention. Without further recital of the evidence it is sufficient to say that, while each of them doubtless honestly believed that he had a legal right to vote at the annexation election, the evidence was sufficient as to each, to support a finding that he had not such legal residence and was not entitled to vote.

The statute requires that the proposition of annexation shall be submitted "to the electors residing in the territory proposed" to be annexed, at a special election held for that purpose, that "the qualified electors residing in said territory so proposed to be annexed shall be entitled to vote upon such proposition," and that "the holding and conducting of such

election shall be in conformity, as far as may be, with the
general laws of this state concerning elections." Under
these provisions no one would be lawfully entitled to vote
at such election, unless he was at the time a permanent
resident of the territory, a resident in the sense that he
would be a qualified elector therein at a general election if,
prior thereto, his residence therein had continued for the
required time. (See *Huston* v. *Anderson,* 145 Cal. 328, [78
Pac. 626].) It is not necessary here to inquire, with respect
to one who had taken up his permanent residence there,
whether such residence must have continued for any speci-
fied period prior to the election, in order to entitle him to
vote. Patterson and Blankenhorn were not residents of the
territory at all in the sense above stated. They were mere
temporary summer residents without intent to remain and
were not voters at that place. The contention of the appel-
lant that the statute was intended to permit any person to
vote at such election who happened at the time to be bod-
ily present there with such family as he had, regardless of
his intent to remain there and make it his home or domicile,
cannot be sustained. (*Huston* v. *Anderson, supra.*) If one
who went there with his family to remain for a period of
three months and then return to his former residence,
were to be considered a qualified elector, the line could
not be drawn at any specific period, and every summer
visitor who was a citizen of the state on the date of the election
could vote, regardless of the time he came or of his intention
to remain. The statute uses the phrase "electors residing in
the territory" with reference to an election to be held therein
to determine a political question, that is, the boundaries of a
political subdivision of the state, and it cannot reasonably be
understood to mean or refer to any other than a legal residence
therein, as distinguished from an actual, but transitory, resi-
dence or sojourn. (*Huston* v. *Anderson, supra.*) The court
below was right in holding these votes illegal and that in con-
sequence thereof the annexation proceedings were void.

This action was not begun until March 30, 1907. The court
finds that during the interval of nineteen months that elapsed
after the culmination of the annexation proceedings and before
the action was begun, the city of Long Beach was exercising
municipal control over the annexed teritory and collecting

municipal taxes on property situated therein. The defendant contends that it is to be presumed also that the annexation was in that interval acquiesced in and recognized by the public authorities of the state as a part of Long Beach, and upon these facts it is asserted that the state, by this delay, acquiescence, and recognition, is estopped to question the validity of the annexation, or has by its laches lost its right to do so. In support of this proposition counsel cite *State* v. *Des Moines*, 96 Iowa, 521, [59 Am. St. Rep. 381, 65 N. W. 818]; *State* v. *Leatherman*, 38 Ark. 81; *Jameson* v. *People*, 16 Ill. 257, [63 Am. Dec. 304]; and *People* v. *Maynard*, 15 Mich. 470. No valid public recognition of the validity of the annexation has been shown, except that of the city of Long Beach itself. On the other hand, it appears that proceedings to annex a part of the same territory to the city of San Pedro were pending when the Long Beach proceeding was begun, that an election for the annexation to San Pedro was held on September 5, 1905, and the result in favor of annexation certified to the secretary of state on September 7, 1905, by which that territory became annexed to San Pedro, if the Long Beach proceeding was invalid, that another proceeding for the annexation of still another part of the same territory to San Pedro was afterwards had whereby the same was certified as annexed thereto on November 30, 1906, and that the legality of the annexation to Long Beach has been in dispute from the beginning, as shown by the case of *Haskell* v. *Long Beach*, 153 Cal. 543, [96 Pac. 92], which was begun immediately after the Long Beach annexation election in August, 1905. Under these circumstances we do not think the state is precluded from inquiry into the validity of the proceeding. There has been no such acquiescence or recognition as appeared in the cases cited by appellant on this point, and no such lapse of time as would be necessary to sustain the defense of laches. The freeholders' charter, as will be shown, was wholly ineffective as to this territory.

It appears that thereafter, on February 5, 1907, the people of Long Beach, at an election held for that purpose, adopted a city charter for the city of Long Beach, prepared by a board of freeholders as provided in section 8 of article XI of the constitution, and that this charter was duly approved by a majority of the members of the legislature on February 26,

1907 (Stats. 1907, pp. 1176-1240). This charter described the boundaries of the city and included, as part of the city, the territory attempted to be annexed thereto by the proceeding which we have declared to be void. It is claimed that this charter so adopted has the force and effect of a law fixing the city boundaries, and that it makes the territory in question a part of the city of Long Beach, notwithstanding the invalidity of the previous annexation.

The constitutional provisions for the adoption of special city charters are designed and adapted to give the people of any existing city an opportunity to frame their own laws to control their municipal affairs and government, according to their own desires and notions. No provision whatever is made for considering the wish or voice of any persons outside the city with regard to such charters, or in relation to the addition of territory to such city by the extension of the boundary lines in the described corporate limits in such proposed charters. On the contrary, it is specifically declared that "a city," manifestly referring to any city already organized, "may frame a charter *for its own government,*" the special charter to be prepared by a board of freeholders selected by the voters residing within the city, the freeholders must all have resided within the city for the five years preceding their selection, and the charter, when thus prepared, must be submitted to the qualified electors of such city for ratification, before approval by the legislature. The people of any outside territory have no opportunity to express their wishes. Thereupon, the section declares, the charter shall become the organic law of such city. All this clearly implies that the special charter is to apply only to territory already erected into a municipality, and it negatives the idea that the provisions of such special charters were intended to delegate to a city the power to enlarge its limits when enacting a new charter, or amending an old one.

The erection of territory into a city, and the change of the boundaries thereof are matters within the general political power of the people, and there can be no doubt that the people, by their constitution, could delegate to any city the power to annex and bring within its municipal jurisdiction any adjacent territory, without consulting the inhabitants of that territory. But we should not declare that a grant of such arbitrary power was intended to be made in any constitution, unless we

CLV Cal.—39

should find it expressed in unequivocal language not capable of any other reasonable interpretation. Our constitution does not contain any language purporting to delegate such powers to cities. The provision concerning freeholders' charters may be given full effect without including a delegation of power to a city to annex territory. The obvious meaning is that such charters are to apply to cities as they exist, and this we hold to be the correct construction.

Section 6 of the same article of the constitution declares that cities shall not be created by special laws but that the legislature, by general laws, shall provide for the incorporation and organization of cities, and, further, that all special charters of any cities "shall be subject to and controlled by general laws," except in municipal affairs. Under this latter provision it is now settled that such special charters are paramount in all matters exclusively of municipal concern, but that in all other affairs, all affairs of state policy and government, the general laws control. Upon this principle it is held that the annexation of territory to a city is not a municipal affair, within the meaning of section 6, but is a matter pertaining to the state at large and within its general powers and functions, and hence, that the general law upon that subject controls. (*People* v. *Oakland,* 123 Cal. 604, [56 Pac. 445].) In that case it was claimed that the annexation of territory was a municipal affair and that the provisions of the charter, so far as they related to that subject, were paramount. The court said that the annexation of territory was "a thing that could not be accomplished through any provision of the charter of the city of Oakland, or otherwise than under the statutory authority given by said act," and that "as the legislature alone has the power to authorize such annexation, it must have the power to prescribe the terms, conditions and mode of annexation."

The decision in *People* v. *Oakland,* 92 Cal. 611, [28 Pac. 807], holding that territory could be excluded from a city by a change in the boundaries thereof in a new freeholders' charter omitting some of its territory, referred to a charter adopted in 1888. This was prior to the passage of the act of 1889 (Stats. 1889, p. 356) providing for the exclusion of territory from cities, and at a time when there was no general law in force authorizing such exclusion. Whether or not it could be accomplished by a freeholders' charter when there was a gen-

eral law covering the subject, is a question not settled by that decision. It may be observed, however, that the question of exclusion is one which affects a part of the existing city, and of which the inhabitants of the territory to be excluded would have notice and upon which they would have an opportunity to vote and to exercise their influence. In these respects it is to be distinguished from the question of the addition of outside territory. But the decision relates solely to the exclusion of territory and it is not authority for the proposition that territory could be annexed by a freeholders' charter, even in the absence of a general law upon that subject.

The provisions of the general law are inconsistent with the theory that such annexation can be accomplished by a freeholders' charter. Section 2 of the general law providing for the organization of cities, under which Long Beach was incorporated, declares that, in the proceeding to incorporate a city, the county board of supervisors shall establish and define its boundaries, and that "the boundaries so established by the board of supervisors shall be the boundaries of such municipal corporation until by action, authorized by law for the annexation of additional territory to, or the taking of territory from, said municipal corporation, such boundaries shall be changed." (Gen. Laws, p. 638; Stats. 1889, p. 371.) The act of 1889 (Stats. 1889, p. 358) provides a complete scheme for the annexation of territory and declares that "the boundaries of any incorporated town or city, whether heretofore or hereafter formed, incorporated, re-incorporated, organized, or reorganized, may be altered, and new territory annexed thereto, incorporated and included therein, and made a part thereof, by proceedings to be had and taken as in this act provided." It was this act which was held to provide the exclusive method for the annexation of territory to cities in *People* v. *Oakland,* 123 Cal. 604, [56 Pac. 445].

Our conclusion is that the part of the freeholders' charter of Long Beach, purporting to include within the limits of that city territory not previously a part thereof, was ineffective and void and that it did not make such territory a part of that city.

The judgment and order are affirmed.

Angellotti, J., and Sloss, J., concurred.