[Civ. No. 7177. Fourth Dist. Oct. 16, 1964.]

CALNEV PIPE LINE COMPANY, Plaintiff and Appellant, v. CITY OF COLTON et al., Defendants and Respondents.

McCabe & Saevig, Roger A. Saevig and Theodore A. McCabe for Plaintiff and Appellant.

Hutton & Edwards, Lonergan & Jordan, O'Melveny & Myers, Pierce Works, William D. Moore and Marshall A. Rutter for Defendants and Respondents.

BROWN (R. M.), J.*—This appeal involves an attack upon the validity of annexation proceedings conducted by the City of Colton and known as West Colton Annexation No. 16. The decision in a companion case, *City of Colton* v. *City of Rialto, ante,* p. 174 [40 Cal.Rptr. 766] 4 Civil No. 7176, is filed concurrently herewith.

Briefly stated, we have found that the Rialto Annexation No. 52 was unlawful in its inception, that a majority protest had been filed in its annexation and that ordinance No. 457 which purported to approve said annexation was invalidly adopted and was void. Therefore, the City of Colton was not precluded from conducting its annexation proceedings.

In addition to the contentions raised by the City of Rialto in 4 Civil No. 7176, appellant contends that the judgment in the present case must be reversed because it was denied a fair hearing before the Colton City Council and because the protest statute, Government Code section 35313,¹ is unconstitutional as applied to the facts in controversy.

The case was tried on stipulated facts and documents. The case involves uninhabited territory lying between and contiguous to the Cities of Rialto and Colton. Rialto had con-

---

*Assigned by Chairman of Judicial Council.
¹Effective September 11, 1957.

ducted proceedings for the annexation of territory, Annexation No. 49, which proceedings were terminated on August 15, 1960, by reason of majority protests having been filed. Within one year following this mandatory termination the Rialto City Council initiated proceedings for Rialto Annexations Nos. 51, 52 and 53. Protest hearings were held with regard to Nos. 51 and 53, and due to majority protests being filed, proceedings were terminated as to Nos. 51 and 53. Though a majority of written protests had also been filed by the owners of territory covered in No. 52, the Rialto City Council continued its hearing to June 5, 1961, at which time, in complete disregard of the fact that a majority of protests had been filed, it introduced and, on June 10, 1961, within five days of its introduction, purported to pass Ordinance No. 457 which purported to approve Rialto Annexation No. 52. The trial court found that neither Rialto nor Colton ever exercised any corporate franchise, municipal or otherwise, within the disputed territory.

On May 2, 1961, Colton adopted its Resolution No. 2159 initiating proceedings known as West Colton Annexation No. 16. A protest hearing was held on June 20, 1961, and petitioner, who had an assessed valuation of its property of $8,870 according to the last equalized assessment roll, and one Lillie Harmon, who had an assessed valuation of $90 on one parcel and $80 on another, filed written protests. The total assessed valuation for the entire territory included in Annexation No. 16 was $112,588. The owners protesting said annexation owned property having an assessed valuation of 8.07 per cent. On June 20, 1961, four members of the Colton City Council and the mayor passed a motion finding that there were insufficient protests to this annexation. Ordinance No. 1092 approving such annexation was passed, approved and adopted on June 27, 1961. This ordinance also included a statement that it was determined that "protests had not been made by owners of one-half of the value of the privately owned territory proposed to be annexed as shown by the last equalized assessment roll, nor by public owners of one-half of the publicly owned territory proposed to be annexed as determined by said legislative body."

On August 28, 1961, the appellant filed its petition for a writ of mandate and review, to which an alternative writ was issued. The petition requested that all proceedings be ordered stayed with regard to West Colton Annexation No. 16 pending a return on the writ and that the city clerk be restrained from filing her certified copy of said ordinance in

the office of the Secretary of State. This was all set forth in the alternative writ. Subsequently an amended petition was filed on September 19, 1961, but the alternative writ remained in force.

The matter was tried on stipulated facts and on documents. The petition for writ of mandate was denied by the trial court which also found that the proceedings of the Colton City Council were legal and proper and that the writ of certiorari would be discharged. It also adjudged that Rialto Annexation No. 52 was, since its inception, illegal, null and void, and that Ordinance No. 457 was null and void and of no force and effect whatsoever.

Appellant complains that the council's determination was not based upon legally competent evidence, that its decision was not made by persons who heard or examined the evidence, and that the city council was not an impartial body.

■ All that the city council had to determine under section 35313 of the Government Code was whether or not protests had been made by owners of more than one-half of the value of the territory as shown by the last equalization assessment, or less than one-half. This the council did by determining that the owners of less than 50 per cent of the total assessed value of the territory sought to be annexed had protested. The decision was made by the city council and was based upon testimony of the city manager that the value of the land covered by the protests was 8.07 per cent of the total value of the land covered by the proposed annexation. It was not necessary to call any other witnesses inasmuch as this was a mathematical computation that the appellant could have ascertained for itself. The list of those within the proposed annexation was available for investigation and examination by the appellant. There is absolutely no evidence to support the proposition urged by the appellant that the city council was not an impartial body.

Appellant was not denied a fair hearing. The transcript of the protest hearing before the city council reveals that the city manager testified about the percentage of protests; then the mayor asked if anyone had anything to say; there was no response.

Mr. Ricketts, the general superintendent for appellant, testified at the protest hearing. He asked if it would be possible to give appellant additional consideration because of the increase in valuation that had come about in recent months, and he thought if the assessments were taken as

188

they "will be next year" one would find that the Calnev property would probably constitute the 50 per cent required, but that if, under the law, the last assessment had to be considered, "we have no leg to stand on."

As the trial court stated in its opinion: "Calnev's position that the Council did not fulfill its legal obligation by calculating the value or percentage of protesting property, but delegated that authority to its City Manager, is an absurdity. Carried to its logical conclusion this line of reasoning would impose upon the Council and its individual members the task of investigation and the ministerial duty of mathematical computation. The Council may properly rely upon its agents and employees in the performance of these functions." No one other than the city council participated in such decision, as is borne out by the transcript.

Appellant further complains that section 35313 requires that if protests are filed the "legislative body shall hear and pass on all protests so made." This does not require that the city council make a finding of the present valuation of the property covered by the protest. Appellant also states that full weight was not given to the value of petitioner's property by not considering the amount carried on the unsecured roll, $240,960. The appellant submits that in the case of annexation of publicly and privately owned property the statute may be construed so as to provide a test of value for protest purposes on a basis other than the last equalized assessment roll, thereby validating the statute and immunizing it against attack on constitutional grounds. It must be noted, however, that with respect to publicly owned property where the section as effective in 1957 provided that the value to be given publicly owned property for protest purposes shall be determined by the legislative body, that section has now been changed in that the value of publicly owned property shall now be determined by the county assessor. (Stats. 1961, ch. 1599, p. 3426.)

It was stipulated that the current assessment roll of 1961-62 showed that the land value of the parcel owned by the appellant was $8,870, the same as the applicable assessment, plus unsecured personal property at $240,960, and even if a later equalized assessment roll which utilized the same figure were adopted, the appellant would be in no different position as far as the two years are concerned, and thus, it is not true that the City of Colton was perfectly willing in March to observe that petitioner's improvements existed and later

denied their existence for protest purposes by using the previous equalized tax roll.[2] However, the value of appellant's property for equalization purposes is taken from the county tax rolls and it is obvious that this annexation was not completed in time for the City of Colton to have such property appear on its tax rolls for the year 1961-62, as Ordinance No. 1092 was not approved and adopted until June 27, 1961.

■ Annexation proceedings do not constitute the exercise of any element of police power. All police powers in California are exercised pursuant to article XI, section 11, of the California Constitution. The exercise of such powers by a city is limited to geographical areas within its limits, and annexation proceedings necessarily affect territories outside the limits of the annexing city.

As stated in *People* ex rel. *Peck* v. *City of Los Angeles*, 154 Cal. 220, 225 [97 P. 311] : "The authority of the legislature to provide for the annexation of territory to existing municipalities is derived from the same constitutional provision (§ 6, art. XI), which authorizes it to provide by general laws for the incorporation of cities. Under the constitution it is left to the legislature to determine the mode in which either incorporation or annexation shall be accomplished. What mode should be adopted was, therefore, purely a question of policy and expediency."

The Supreme Court of the United States is in complete accord with this view. In *Hunter* v. *City of Pittsburgh*, 207 U.S. 161, at pages 178-179 [28 S.Ct. 40, 46, 52 L.Ed. 151, 159], it was said : "The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States."

■ To the appellant's contention that such an annexation will operate to take property without due process of law, the

---

[2]Revenue & Taxation Code section 405 fixes the first Monday in March for determining the annual assessment. Section 1603, the roll to be equalized between the first Monday of July and the third Monday in July.

answer is found in *People* ex rel. *Averna* v. *City of Palm Springs*, 51 Cal.2d 38, 47 [331 P.2d 4], as follows: "There is no merit in this contention. No one has a vested right to be either included or excluded from a local governmental unit [citation], and the fixing of territorial boundaries of a municipal corporation will not ordinarily constitute an invasion of federal constitutional rights."

 The Legislature provided that proceedings must terminate if a majority protest as shown by the last equalized assessment roll has been filed. It would be impossible or impracticable to include personal property for this purpose. As was stated in *People* ex rel. *Mosk* v. *City of Santa Barbara*, 192 Cal.App.2d 342, 354 [13 Cal.Rptr. 423] : "Although section 35313 [Gov. Code] has been amended several times, the Legislature each time has retained and employed the phrase *'as shown by the last equalized assessment roll.'* Use of the county assessment roll is a common method of establishing the value and classification of property for various purposes; e.g., incorporations, special assessments, special districts, as well as annexations. (See, for example, Government Code, §§ 34303 [organization of new cities], 51552 [special assessments], 58700 [formation of districts], 61805 and 61806 [community service districts] ; *Bryant* v. *Board of Supervisors*, 32 Cal.App. 495, 504 [163 P. 341] [storm water districts] ; *Miller & Lux, Inc.* v. *Board of Supervisors*, 119 Cal. App.2d 29, 38 [258 P.2d 570] [Water Code, § 20700, irrigation districts]. . . .)"

In *American Distillery Co.* v. *City Council of City of Sausalito*, 34 Cal.2d 660, 665 [212 P.2d 704, 18 A.L.R.2d 1247], the city council attempted to impute a value to government-owned land according to an assessment roll other than the last roll. The trial court's conclusion that the last assessment roll was the roll to be considered was upheld.

In *Heller* v. *City Council of City of Seal Beach*, 157 Cal. App.2d 441 [321 P.2d 97], the District Court of Appeal held that the council acted improperly and in violation of the express mandate of the statute by assigning a value to government-owned property other than that shown on the last equalized assessment roll.

The city council "should not be permitted to 'pierce' the assessment roll and make its independent determination of classification and valuation." (*People* ex rel. *Mosk* v. *City of Santa Barbara, supra,* 192 Cal.App.2d 342, 355.)

The value of land and improvements as shown in the last equalized assessment roll has been strictly applied in all in-

stances. This measure is historic, traditional and indeed, reasonable.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 9, 1964.