[Civ. No. 68053. Second Dist., Div. Six. Dec. 28, 1983.]

FELTON A. FERRINI et al., Plaintiffs and Respondents, v.
CITY OF SAN LUIS OBISPO, Defendant and Appellant;
PUBLIC INTEREST ACTION CENTER OF SAN LUIS OBISPO,
Intervener and Appellant.

COUNSEL

George C. Thacher, City Attorney, for Defendant and Appellant.

Stuart & Shaw and A. J. Shaw, Jr., for Intervener and Appellant.

Ogle, Gallo & Merzon and Charles E. Ogle for Plaintiffs and Respondents.

OPINION

**GILBERT, J.—** ▮▮ Here we conclude that the Municipal Organization Act of 1977, Government Code sections 35000 to 35500 (MORGA),[1] embodies the exclusive procedure for annexation of territory to a city, and precludes an election by the city voters in uninhabited annexations.

### FACTS

Felton Ferrini and Marlene Frazier (hereinafter together Ferrini) owned 199 acres of uninhabited land contiguous to the City of San Luis Obispo (City). In early 1978 Ferrini filed a petition with the Local Agency Formation Commission (LAFCO), County of San Luis Obispo, for the annexation of this land to the City. The Ferrini annexation complied with the provisions of MORGA which became effective January 1, 1978.

On April 20, 1978, LAFCO by resolution approved the Ferrini annexation, subject to certain terms and conditions. Among other things LAFCO required a boundary revision, a revised map, an open space easement, and prezoning of the territory and authorized the City to complete the annexation without further notice, hearing or election.

The City complied with the terms and conditions of the resolution. The city council approved amendment to the City's general plan designating 51 acres of the Ferrini annexation as low density residential and 148 acres as agriculture/conservation open space. It also adopted an ordinance amending the official zone map to prezone the territory and on July 5, 1978, by resolution, it approved the Ferrini annexation. Ferrini recorded a deed granting the City a perpetual open space easement on 148 acres. Finally, on July 24, 1978, the executive officer of LAFCO prepared the certificate of completion which was recorded on July 26, 1978.

---

[1]Unless otherwise indicated, all statutory references are to the Government Code.

Meanwhile, on February 8, 1978, the electorate filed an initiative petition to obtain an election on proposed charter amendment 727.[2] On June 6, 1978, the City electorate approved charter amendment 727 which became effective June 30, 1978. As a result, the city council scheduled a special election for November 7, 1978, to vote on the Ferrini annexation. At that election the voters rejected the Ferrini annexation.

Ferrini subsequently instituted this action for declaratory relief against the City, challenging the validity of charter amendment 727.[3] The Public Interest Action Center of San Luis Obispo County (Center) intervened[4] in support of the amendment's validity. The trial court held that charter amendment 727 was unconstitutional and that the annexation was valid and effective as of July 26, 1978. The City and the Center have appealed.

We affirm.

## DISCUSSION

MORGA was enacted following a long period of turbulence and controversy over territorial annexations of unincorporated areas by cities. Prior to 1963, "annexation controversies took on the appearance of 'a kind of warfare in which the unincorporated suburbs of the state have been both the prize and battleground, the annexation process a tactic, the location of annexation boundaries a significant weapon, and their calculated manipulation a commonplace event.'" (*Citizens Against Forced Annexation* v. *Local Agency Formation Com.* (1982) 32 Cal.3d 816, 828 [187 Cal.Rptr. 423, 654 P.2d 193], quoting *Tillie Lewis Foods, Inc.* v. *City of Pittsburgh* (1975) 52 Cal.App.3d 983, 995 [124 Cal.Rptr. 698].)

The Legislature in 1963 acknowledged the need for a supralocal agency to resolve annexation issues affecting local governments by establishing a LAFCO in each county for this purpose. The Knox-Nisbet Act of 1965 broadened the authority of the LAFCOs to approve, modify, or disapprove annexation proposals in accord with specified standards. (§§ 54774, 54790,

---

[2]Charter Amendment 727, entitled "Voter Approval of Annexations," provides: "Except for territory which is dedicated solely and entirely to a permanent public use, no annexation of territory to the City shall become effective until approved by a vote of the people at a general or special election held after the final decision by the Council to annex such territory."

[3]One hundred percent of the ownership of the property which is the subject of annexation includes Ferrini, Frazier and the Karshner Family Trust which by stipulation was joined as a party plaintiff.

[4]Although the County of San Luis Obispo and Dick Frank, its tax assessor, were also named defendants, it was agreed at trial that their interests were congruent with the Ferrini position and neither of these parties has appealed.

54796; see *Citizens Against Forced Annexation* v. *Local Agency Formation Com., supra,* 32 Cal.3d 816; *Bozung* v. *Local Agency Formation Com.* (1975) 13 Cal.3d 263, 274 [119 Cal.Rptr. 215, 531 P.2d 783].) LAFCO is a creature of the Legislature exercising, in this instance, authority delegated by MORGA. (See, e.g., *Friends of Mount Diablo* v. *County of Contra Costa* (1977) 72 Cal.App.3d 1006, 1011 [139 Cal.Rptr. 469]; *Bookout* v. *Local Agency Formation Com.* (1975) 49 Cal.App.3d 383, 388 [122 Cal.Rptr. 668].)

"The preface to the 1977 law [MORGA] which led to its enactment reiterates the state's interest in encouraging orderly growth and development and in favor of logical determination of city boundaries (§ 35000). It then explicitly finds that 'urban population densities . . . necessitate a broad spectrum and high level of community services and controls,' which can be best provided by a 'single governmental agency, rather than several limited purpose agencies.' (*Id.*) The Act thus states a legislative goal of providing a full range of municipal services to developing areas beyond present city boundaries and, by implication, the belief of the Legislature that such services can be provided more efficiently by municipal government, through annexation, than by the special districts and agencies which more commonly serve unincorporated lands.

"The 1977 Act . . . comprehensively revises the statutory procedures governing incorporation, civic reorganization, annexation, and detachment of territory. It confirms the authority of the commissions to control annexation (see § 35150), and the right of residents of inhabited territories to self-determination (see § 35228), but eliminates the power of city governments to reject an annexation. Thus, under the 1977 Act, if the residents of an affected area desire to join a neighboring city, and that proposal accords with the pattern of orderly community development as envisioned by the commission, the city and its voters no longer have the power to defeat annexation.

"The foregoing history indicates that the Legislature had determined that the goals of promoting orderly and logical community development, and of providing municipal services to newly urbanized regions, cannot adequately be met if city governments and their voters have a veto power over annexations approved by local agency formation commissions." (*Citizens Against Forced Annexation* v. *Local Agency Formation Com., supra,* 32 Cal.3d 816, 828-829.)

MORGA provides "the sole and exclusive authority and procedure for the initiation, conduct, and completion of city incorporations, municipal

reorganizations, or changes of organization." (§ 35002) " 'Change of organization' " specifically includes annexation. (§ 35027) MORGA repeals and replaces earlier statutes regulating annexation and insures that LAFCOS will not be inhibited in exercising their authority by limiting the veto power of the city electorate. It provides for elections only in exceptional circumstances when inhabited territory is annexed (see §§ 35228, 35150, 35231, subds. (a) and (b)) and makes no provision for an election when uninhabited territory is annexed. (§ 35229.)

Appellants contend that charter amendment 727 embodies the constitutionally reserved referendum powers of the City electorate and is to be liberally construed. "Declaring it 'the duty of the courts to jealously guard this right of the people' [citation], the courts have described the initiative and referendum as articulating 'one of the most precious rights of our democratic process.' [Citation.] '[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.' [Citation. Fns. omitted.]" (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 591 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].)

■ In order to justify an infringement on established voting rights, the state must satisfy strict equal protection standards and show that the distinctions drawn are necessary to further its purpose and that the restraints on the franchise are justified by a compelling state interest. (*Curtis* v. *Board of Supervisors* (1972) 7 Cal.3d 942, 952 [104 Cal.Rptr. 297, 501 P.2d 537]; *Williams* v. *Rhodes* (1968) 393 U.S. 23, 31 [21 L.Ed.2d 24, 31, 89 S.Ct. 5].)

The state Constitution provides: "The Legislature shall prescribe uniform procedure for city formation and provide for city powers." (Cal. Const., art. XI, § 2, subd. (a).) ■ The city electorate does not have an absolute right to vote on annexations since "it is well established that the state may create, expand, diminish, or totally abolish municipal corporations with or without the consent of its citizens, or even against their protest." (*Scuri* v. *Board of Supervisors* (1982) 134 Cal.App.3d 400, 404-405 [185 Cal.Rptr. 18].) The Legislature need make no provision for elections in annexation proceedings and equal protection standards are satisfied by legislation avoiding election where the territory to be annexed is of small size (*Scuri* v. *Board of Supervisors, supra,* at p. 409) or "uninhabited" (*Weber* v. *City Council* (1973) 9 Cal.3d 950 [109 Cal.Rptr. 553, 513 P.2d 601].)

In addition, the California Supreme Court has recently upheld MORGA's provisions limiting election in inhabited annexations to residents of the territory to be annexed against challenge on state and federal equal protection grounds. (*Citizens Against Forced Annexation* v. *Local Agency Formation Com.*, *supra*, 32 Cal.3d 816, 819.) The *Citizens* court observed: "In some cases . . . , it is in the interest of the state to facilitate such annexations even if the majority of residents of the annexing city are opposed, since otherwise problem areas with a low tax base or a high cost of providing services might be unable to gain admission to any adjoining municipality. We conclude that the state's interest in this regard is of compelling character, and is plainly one which could not be achieved if the annexation election was open to the residents of the annexing city." (*Id.*, at p. 819.)

San Luis Obispo argues that it is a home rule charter city (Cal. Const., art. XI, § 3) and therefore it "may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations" in its charter unfettered by general state law. (Cal. Const., art. XI, § 5, subd. (a); *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 135 [98 Cal.Rptr. 281, 490 P.2d 793].) Nonetheless, in matters of statewide concern, where the state Legislature has exhibited the intent or purpose to occupy the field to the exclusion of municipal regulation, the city lacks authority to legislate under the preemption doctrine. (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137]; *Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles* (1976) 62 Cal.App.3d 108, 122 [132 Cal.Rptr. 796].) Taking all of the circumstances together, we are persuaded that the Legislature's intent to occupy the field by enacting MORGA is clearly established. (See, e.g., *In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809].)

In the absence of constitutional definition, the judiciary has established criteria for distinguishing municipal affairs from matters of statewide concern which foreclose local legislation. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 294 [32 Cal.Rptr. 830, 384 P.2d 158]; see also pp. 292-293, fn. 11.) In making this determination, the courts look to the subject matter and the intent expressed by the state Legislature.

The annexation of territory by a city has long been held to be both a legislative matter and one of statewide concern. (*People* v. *City of Long Beach* (1909) 155 Cal. 604, 610 [102 P. 664]; *County of San Mateo* v. *City Council* (1959) 168 Cal.App.2d 220 [335 P.2d 1013].) Consequently, matters relating to the annexation of territory to a municipality are not municipal affairs. (*Weber* v. *City Council, supra,* 9 Cal.3d 950; *People* v. *City of*

*Los Angeles* (1908) 154 Cal. 220, 228 [97 P. 311]; *County of Los Angeles* v. *City Council* (1962) 202 Cal.App.2d 20, 25 [20 Cal.Rptr. 363].)

 Therefore, the municipal charter may not contain provisions pertaining to annexation which are contrary to the general laws of statewide application. "The annexation of territory to a city is governed by the general laws of the state and is not a municipal affair [citation], and where a city council proceeds under legislative requirements relating to annexation, such requirements constitute the measure of power to be exercised. [Citations.]" (*County of Los Angeles* v. *City Council, supra,* 202 Cal.App.2d 20, 25.)

The intention of the state Legislature to occupy the field in annexation procedures is evidenced by its declaration that MORGA shall provide the exclusive method for changes of organization (§ 35002) which include annexations (§ 35027). "[W]here the statute contains express provisions indicating that the Legislature intends its regulations to be exclusive within a certain field, local government may not legislate in that field." (*Stewart* v. *County of San Mateo* (1966) 246 Cal.App.2d 273, 282 [54 Cal.Rptr. 599].) Where the Legislature has enacted a comprehensive regulatory system with express provisions for elections under limited conditions we may infer a negation of election under all other circumstances. (*Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196 [132 Cal.Rptr. 377, 553 P.2d 537].) A negation of elections by the city electorate in uninhabited annexations may be inferred from the MORGA provisions which define the conditions under which elections are permitted.

Appellants argue that the referendum has been held applicable in a municipal annexation under the Uninhabited Territories Act of 1939, MORGA's predecessor. (*Norlund* v. *Thorpe* (1973) 34 Cal.App.3d 672 [110 Cal.Rptr. 246].) There the appellate court concluded that the statutory procedures did not suggest that the Legislature "intended to vest all power in the city legislative bodies and to exclude the people's right of referendum." (*Id.,* at p. 675.)

At that time a city resolution of annexation was considered the same as an ordinance of annexation (§ 35310.1), which was not effective until 30 days after its passage. The annexation challenged in *Norlund* had not been completed when the referendum was filed, and the court concluded from the 30-day delay that the Legislature had no intent to preclude a referendum vote. The state Legislature subsequently repealed section 35310.1. MORGA provides for city council annexation approval by resolution (§ 35220) and annexation is deemed complete as of the date the certificate of completion is executed by the executive officer of LAFCO (§§ 35353, 35350). The

subsequent deletion of the provisions relied upon in *Norlund* signals the intent of the Legislature to change the law, preclude the application of referendum, and overrule *Norlund* as precedent. (See, e.g., *Wallace* v. *Department of Motor Vehicles* (1970) 12 Cal.App.3d 356, 361 [90 Cal.Rptr. 657].)

■ Appellants further argue that even where the state has enacted general laws controlling the subject matter, local legislation is upheld where there is no conflict. This is true where the local ordinance involves the police power of the city, as in gun registration (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851 [76 Cal.Rptr. 642, 452 P.2d 930]) or entertainment licensing (*Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1 [56 Cal.Rptr. 853]). ■ The initiative may also be used to enact legislation within the police power, such as rent control (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 141 [130 Cal.Rptr. 465, 550 P.2d 1001]) or zoning (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582; *Builders Assn. of Santa Clara-Santa Cruz Counties* v. *Superior Court* (1974) 13 Cal.3d 225 [118 Cal.Rptr. 158, 529 P.2d 582].) ■ Annexation proceedings do not constitute the exercise of police power because they necessarily affect territories outside the city, while the police power is limited to territory within the city limits. (*Calnev Pipe Line Co.* v. *City of Colton* (1964) 230 Cal.App.2d 184, 189 [40 Cal.Rptr. 755].)

■ Furthermore, annexation procedures are not subject to the initiative process because MORGA delegates authority over the conduct of annexation to LAFCO and the city council. Delegation of authority beyond this, even to the city electorate, is impermissible. (*Myers* v. *City Council of Pismo Beach* (1966) 241 Cal.App.2d 237 [50 Cal.Rptr. 402]; *Mervynne* v. *Acker* (1961) 189 Cal.App.2d 558, 562 [11 Cal.Rptr. 340].) Thus, a "proposed initiative ordinance cannot be used as an indirect or backhanded technique to invoke the referendum process." (*Myers* v. *City Council, supra,* at p. 243.) ■ Similarly, a charter amendment adopted by the initiative process "cannot be given effect to the extent that it conflicts with general laws either directly or by entering a field which general laws are intended to occupy to the exclusion of municipal regulation." (*Birkenfeld* v. *City of Berkeley, supra,* 17 Cal.3d 129 at p. 141.) ■ The power of initiative is subject to the same limitations as is the legislative action to which it relates; they are coextensive. (*Legislature of the State of California* v. *Deukmejian* (1983) 34 Cal.3d 658, 675 [194 Cal.Rptr. 781, 669 P.2d 17].)

Appellants also contend that the initiative and referendum apply to all legislative acts of the city council. (See, e.g., *Citizens Against a New Jail*

v. *Board of Supervisors* (1976) 63 Cal.App.3d 559 [134 Cal.Rptr. 36]; *Hopping* v. *Council of City of Richmond* (1915) 170 Cal. 605 [150 P. 977], and *O'Loane* v. *O'Rourke* (1965) 231 Cal.App.2d 774 [42 Cal.Rptr. 283].)

It has long been established that the powers of initiative and referendum reserved to the people of the cities apply "only to the acts of the city council, or other legislative body of the particular city, which are exercises of its legislative power." (*Hopping* v. *Council of City of Richmond, supra,* 170 Cal. 605, 609-610; see also (*Lincoln Property Co. No. 41, Inc.* v. *Law* (1975) 45 Cal.App.3d 230 [119 Cal.Rptr. 292]). The California Supreme Court in *Associated Home Builders* countenanced use of the initiative in zoning matters, but drew the line in administrative matters. "We distinguish those decisions which bar the use of the initiative and referendum in a situation in which the state's system of regulation over a matter of statewide concern is so pervasive as to convert the local legislative body into an administrative agent of the state." (*Associated Home Builders etc., Inc.* v. *City of Livermore, supra,* 18 Cal.3d 582, 596, fn. 14.)

When the local legislative body has by state legislation been converted into an administrative agent of the state, the city council merely carries out state policy declared by the enabling legislation. "[A]cts constituting a declaration of public purpose and making provisions for ways and means of its accomplishment may be generally classified as calling for the exercise of legislative power. Acts of administration, on the other hand, are those which are necessary to carry out the legislative policies and purposes already declared by the legislative body. [Citations.]" (*Lincoln Property Co. No. 41, Inc.* v. *Law, supra,* 45 Cal.App.3d 230, 234.)

In *Friends of Mount Diablo* v. *County of Contra Costa, supra,* 72 Cal.App.3d at page 1011, the court concluded that the actions of the board of supervisors under the district reorganization act are like those of LAFCO in that both act administratively. " ' "If the subject is one of statewide concern in which the Legislature has delegated decision-making power, not to the local electors, but to the local council or board as the state's designated agent for local implementation of state policy, the action receives an 'administrative' characterization, hence is outside the scope of the initiative and referendum. [Citations.]" ' " (*Friends of Mount Diablo, supra,* 72 Cal.App.3d at p. 1011, quoting *Walker* v. *City of Salinas* (1976) 56 Cal.App.3d 711, 716 [128 Cal.Rptr. 832].) Referendum is withheld in cases of administrative decision, said the court, since "to allow referendum to annul or delay executive or administrative conduct would destroy the efficient administration of government." (*Friends of Mount Diablo, supra,* at p. 1013.) Similarly, the acts of LAFCO and the city council are administrative because MORGA has delegated decision-making power to them.

The judgment of the trial court is affirmed.

Stone, P. J., and Abbe, J., concurred.